## STATE ex rel. J. W. SMITH v. ORIN DANIELS.[1]

June 7, 1912.

Nos. 17,653—(20).

**Membership in labor union — complaint does not state criminal offense.**
> Under the decision of the Supreme Court of the United States in Adair v. United States, 208 U. S. 161, which this court must follow and apply, it is *held* that a criminal complaint based on section 5097, R. L. 1905, which merely alleges that the employer required the employee to enter into a verbal agreement not to remain a member of a labor organization as a condition of retaining his employment, does not state a criminal offense.

Upon the petition of J. W. Smith, the district court for Polk county issued its writ of habeas corpus directed to the sheriff of that county. The sheriff made return that relator was detained in custody by virtue of the criminal warrant set out in the opinion. The relator demurred to the return of the sheriff. The matter was heard

[1] Reported in 136 N. W. 584.

[Note] Constitutionality of statutes forbidding employer to exact agreement from employee not to join labor union, see note in 7 L.R.A.(N.S.) 282.

upon the petition and writ, return of sheriff, and demurrer of relator to the return, by Watts, J., who sustained the demurrer and discharged relator from custody of the sheriff. From an order sustaining the demurrer of relator to the return, and discharging relator from the custody of the sheriff, the sheriff appealed. Affirmed.

*Eric O. Hagen, Lyndon A. Smith,* Attorney General, and *Alexander L. Janes,* Assistant Attorney General, for appellant.

*E. A. Grady* and *M. L. Countryman,* for respondent.

HOLT, J.

This is an appeal by the sheriff of Polk county from an order of the district court releasing and discharging the relator in a habeas corpus proceeding from the custody of the respondent therein, said sheriff, who returned that he held relator by virtue of a criminal warrant duly issued out of the municipal court of the city of Crookston. The warrant is as follows:

"State of Minnesota,   ⎰ ss.                        "Crookston.
"County of Polk,   ⎱                     Municipal Court,

"The State of Minnesota, to any Police Officer or Constable of the city of Crookston or to the Sheriff of said County:

"Whereas, Carl Swanson has this day complained in writing to me, on oath, that at all times herein mentioned the Great Northern Railway Company was and still is a corporation, duly organized, created, and existing under and by virtue of the laws of the state of Minnesota; that at all times herein mentioned one J. W. Smith was and still is an employee of the said Great Northern Railway Company, to wit, the master mechanic of the said Great Northern Railway Company at the Northern division thereof; that on the 24th day of February, 1912, one Carl Swanson was and still is a member of the Brotherhood of Railway Carmen of America, a lawful labor organization, duly organized, created, and existing under and by virtue of the laws of the state of Minnesota, and was on said date in the employ of the said Great Northern Railway Company as assistant car foreman at Redlands, in said county; that on the said 24th day of February, 1912, at Redlands, in said county, while the said Carl

Swanson was so employed as aforesaid by the said Great Northern Railway Company, the said J. W. Smith did wilfully, wrongfully, and unlawfully require the said Carl Swanson to enter into a verbal agreement not to remain a member of the said Brotherhood of Railway Carmen of America as a condition of retaining his (the said Carl Swanson's) employment with the said Great Northern Railway Company—against the form of the statute in such case made and provided, and against the peace and dignity of the state of Minnesota, and prays that the said J. W. Smith may be arrested and dealt with according to law.

"Now, therefore, you are commanded forthwith to apprehend the said J. W. Smith and bring him before me, to be dealt with according to law.

"Witness the Honorable Louis E. Gossman, Municipal Judge, this 13th day of March, 1912.

"Nicholas  B.  Moran

"[Seal.]"                                              "Clerk

The Supreme Court of the United States, in Adair v. United States, 208 U. S. 161, 28 Sup. Ct. 277, 52 L. ed. 436, 13 An. Cas. 764, considered the constitutionality of an act of Congress which reads as follows: "That any employer subject to the provisions of this act and any officer, agent, or receiver of such employer, who shall require any employee, or any person seeking employment, as a condition of such employment, to enter into an agreement, either written or verbal, not to become or remain a member of any labor corporation, association, or organization, or shall threaten any employee with loss of employment, or shall unjustly discriminate against any employee because of his membership in such a labor corporation, association or organization,    *    *    *    is hereby declared to be guilty of a misdemeanor," etc.

Adair was indicted under two counts. In the first count it was charged that as agent of the employer he did unlawfully and unjustly discriminate against the employee O. B. Coppage, "by then and there discharging said O. B. Coppage from such employment of said common carrier and employer, because of his membership in

said labor organization, and thereby did unjustly discriminate against an employee of a common carrier and employer engaged in interstate commerce because of his membership in a labor organization," etc.   The second count charged that Adair "did unlawfully threaten said O. B. Coppage, employee as aforesaid, with loss of employment, because of his membership in said labor organization," etc.   The demurrer to the indictment was overruled, and the defendant pleaded not guilty, but was convicted on the first count.

· In view of the result of the trial, the Supreme Court, in considering the case on appeal, says: "We shall, therefore, say nothing as to the second count of the indictment."   The court, however, holds that a law making it a criminal offense to discharge an employee simply because of his membership in a labor organization is an invasion of personal liberty, as well as of the right of property, and unenforceable, as repugnant to the declaration of the fifth amendment to the Constitution of the United States that no person shall be deprived of liberty or property without due process of law.

In the course of the opinion Justice Harlan makes use of this language: "The first inquiry is whether the part of the tenth section of the act of 1898 upon which the first count of the indictment was based is repugnant to the fifth amendment of the Constitution, declaring that no person shall be deprived of liberty or property without due process of law.   In our opinion that section, in the particular mentioned, is an invasion of the personal liberty, as well as of the right of property, guaranteed by that amendment.   Such liberty and right embraces the right to make contracts for the purchase of the labor of others, and equally the right to make contracts for the sale of one's own labor; each right, however, being subject to the fundamental condition that no contract, whatever its subject-matter, can be sustained which the law, upon reasonable grounds, forbids as inconsistent with the public interests, or as hurtful to the public order, or as detrimental to the common good.   *   *   *   It was the right of the defendant to prescribe the terms upon which the services of Coppage would be accepted, and it was the right of Coppage to become or not, as he chose, an employee of the railroad company

upon the terms offered to him.   *   *   *   The right of a person to sell his labor upon such terms as he deems proper is, in its essence, the same as the right of the purchaser of labor to prescribe the conditions upon which he will accept such labor from the person offering to sell it.   So the right of the employee to quit the service of the employer, for whatever reason, is the same as the right of the employer, for whatever reason, to dispense with the services of such employee.   It was the legal right of the defendant Adair—however unwise such a course might have been—to discharge Coppage because of his being a member of a labor organization, as it was the legal right of Coppage, if he saw fit to do so—however unwise such a course on his part might have been—to quit the service in which he was engaged, because the defendant employed some persons who were not members of a labor organization.   In all such particulars the employer and employee have equality of right, and any legislation that disturbs that equality is an arbitrary interference with the liberty of contract, which no government can legally justify in a free land."

It is true that the above decision is based on the fifth article of the amendment to the Federal Constitution, which has been held to be a limitation upon the powers of the national government, and not affecting those of the states.   In Spies v. Illinois, 123 U. S. 131, 8 Sup. Ct. 22, 31 L. ed. 80, the court says: "That the first ten articles of amendment were not intended to limit the powers of the state governments in respect to their own people, but to operate on the national government alone, was decided more than half a century ago, and that decision has been steadily adhered to since."   State v. Marciniak, 97 Minn. 355, 105 N. W. 965; 6 Am. & Eng. Enc. (2d ed.) 961.   But the limitation imposed upon the powers of the Federal government by the fifth article of the amendments, contained in the words, "No person shall be deprived of life, liberty, or property without due process of law," is the same language found in section 1 of the fourteenth article of the amendments, limiting the powers of the state upon that subject.   It reads:   "Nor shall any state deprive any person of life, liberty or property without due process of law."   It therefore necessarily follows that, when the Su-

preme Court of the United States held the provision of the act of Congress in the particular upon which the first count of the indictment in the Adair case is based to be void as an encroachment upon the personal rights guaranteed by the language quoted from the fifth amendment, a similar provision in an act of the legislature of a state must likewise be held to be an invasion of the same rights and prohibited in the very same terms by section 1 of the fourteenth amendment, limiting the powers of the states.

In so far as the Federal Supreme Court has declared an enactment of a legislative body to be in contravention of the Constitution of the United States, this court is in duty bound to follow and declare an act of like character, scope, and effect invalid. Section 5097, R. L. 1905, in this particular, under which the prosecution against relator is attempted, is so essentially like that part of the act of Congress under which the indictment of Adair was drawn in its scope, purpose, and result that it may not be distinguished therefrom. It reads: "It shall be unlawful for any person, company, or corporation, or any agent, officer or employee thereof, to coerce, require, or influence any person to enter into any agreement, written or verbal, not to join, become, or remain a member of any lawful labor organization or association, as a condition of securing or retaining employment with such person, firm, or corporation."

We must, therefore, in obedience to the ruling of the Federal Supreme Court, accept as the law of the land that an employer may dismiss from his service any employee he sees fit for no cause or for any cause, assigned or unassigned, arbitrary, capricious, or otherwise. According to the decision in the Adair case, discriminating against members belonging to labor organizations by discharging them from employment, and retaining those employees only who do not belong or are willing to quit such organizations, cannot be an offense, because the Constitution of the United States protects the employer in his liberty to so discriminate. So long as that decision remains in force, any act of a legislative body at variance therewith must be regarded as unconstitutional.

As will be noticed, the court in the case mentioned expressly refrained from passing on the provision of the law upon which the

second count in the indictment was based, namely, that part which forbids an employer to threaten an employee with loss of employment because of his membership in a labor organization. In other words, the constitutionality of the coercion feature of the law was not determined. Our statute contains also an inhibition against coercion. And we shall, for the purpose of this decision, assume that in so far as section 5097, R. L. 1905, is directed against the offense of coercion, the question of its constitutionality has not been foreclosed by the Adair decision.

Theoretically the employer and employee are on an equality, so that one is free to employ, the other to accept the employment, as he sees fit; but in practice it is to the employee very often a matter of compulsion, and not of free choice. As a rule, his daily wage is needed for the daily wants of himself and family, and nothing is left for the morrow. To sustain life he must needs obtain or retain employment on whatever terms it may be offered. Under such conditions his necessities may easily be made use of as a means of coercion. If an employer, who knows that his employee is in a position where he must retain the employment or starve, should then, with threat of dismissal from service, coerce him to leave an organization wherein the employee found help and support, and which was in no way inimical to the interests of the employer, we would all unhesitatingly condemn the conduct of the employer as a moral wrong. We fail to see wherein coercion under similar circumstances may not also be a legal wrong and a violation of said section 5097, R. L. 1905.

We are, however, of the opinion that the offense set out in the warrant (it is charged in the same terms in the complaint) is not that of coercion. It is charged that the defendant, the relator herein, did require the employee to enter into a verbal agreement not to remain a member of a labor organization, naming it, as condition of retaining the employment. No threat or coercion is alleged. The employee may have been entirely in accord with the desire of the defendant, the relator. Hence the offense set out brings it within the decision of the Adair case, in that, at the most, it merely shows a discrimination against the employee because of his membership

118 M.—11.

in a labor organization. Coerce or threaten means the use of some impelling force against the will or desire of the one coerced or threatened. Coercion is either physical force, used to compel a person to act against his will, or implied legal force, where one is so under subjection of another that he is constrained to do what his free will would refuse. See Black, Law Dict. Coercion is usually accomplished by indirect means, as threats or intimidation; physical force being more rarely employed in coercing. Webster, Int. Dict.

We have also section 5140, R. L. 1905, which defines coercion. It provides that every person who, with intent to compel another to do or abstain from doing an act which such other person has a legal right to do or abstain from doing, shall wrongfully and unlawfully attempt to intimidate such person by threats or force, shall be guilty of a misdemeanor. There are no threats charged, and nothing to indicate that the employee had any objection whatever to making the agreement which defendant, this relator, required.

The order must therefore be affirmed.