# A. J. BEMIS v. STATE.

No. A-1469.    Opinion Filed October 9, 1915.

(152 Pac. 456.)

1.    **CONSTITUTIONAL LAW — Due Process of Law — Employment Contract — Stipulation — Termination of Employment.** Whatever either employer or employee has the right, under the due process of law clause of U. S. Const., 14th Amendment, to treat as sufficient ground for terminating the employment, where there is no stipulation on the subject, he has the right to provide against by insisting that a stipulation respecting it shall be a sine qua non of the inception of the employment or of its continuance, if it be terminable at will.

2.    **CONSTITUTIONAL LAW—Validity of Statute—Police Regulation.** A statutory provision which is not a legitimate police regulation cannot be made such by being placed in the same act with a police regulation, or by being enacted under a title that declares a purpose which would be a proper object for the exercise of that power.

3.    **MASTER AND SERVANT—Statutes—Validity—Terms of Employment.** To punish an employer or his agent for simply proposing certain terms of employment under circumstances devoid of coercion, duress, or undue influence, has no reasonable relation to a declared purpose, in a statute, of repressing coercion, duress, or undue influence.

4.    **CONSTITUTIONAL LAW — Statutes — Validity — Restriction of Rights—Police Power.** The several states are debarred by U. S. Const., 14th Amendment, from striking down personal liberty or property rights, or materially restricting their normal exercise, excepting so far as may be incidentally necessary for the accomplishment of some other and paramount object, and one that concerns the public welfare. The mere restriction of liberty or of property rights cannot, of itself, be denominated public welfare, and treated as a legitimate object of the police power.

5.    **CONSTITUTIONAL LAW—Due Process—Employment Contract.** The rights of personal liberty and property are infringed without due process of law, contrary to the United States Constitution, 14th Amendment, by section 4041, Comp. Laws 1909, which, as construed and applied by the trial court in the case at bar, an employer or his agent may be criminally punished for having prescribed as a condition upon which one may secure employment under, or remain in the service of, such employer (the employment being terminable at the will of either party) that the employee shall enter into an agreement not to become or remain a member of any labor organization while so employed; the employee being

subject to no incapacity or disability, but, on the contrary, free to exercise a voluntary choice between the employment offered and membership in the union of which he may be a member. Coppage v. Kansas, 236 U. S. 1, 35 Sup. Ct. 240, 59 L. Ed. 441; L. R. A. 1915 C., 960.

*Appeal from County Court, Oklahoma County;  John W. Hayson, Judge.*

A. J. Bemis was convicted of unlawfully coercing laborers, and appeals. Reversed.

*Shartel, Keaton & Wells* and *Snyder, Owen & Lybrand,* for the plaintiff in error.

*S. T. Bledsoe* and *R. A. Kleinschmidt, amicus curiae.*

*Chas. West,* Atty. Gen., and *R. E. Gish,* of counsel, for the defendant in error.

ARMSTRONG, J. The plaintiff in error, A. J. Bemis, was convicted at the July, 1911, term of the County Court of Oklahoma county on a charge of unlawfully coercing laborers, and his punishment fixed at a fine of $200.00. To secure a reversal of this judgment, he brings this appeal in proper form and in due time as provided by law. The information upon which the prosecution and conviction is based, is as follows:

"In the name and by the authority of the state of Oklahoma, comes now Sam Hooker, the duly qualified and acting county attorney, in and for Oklahoma county, and state of Oklahoma, and on his official oath gives the County Court in and for said Oklahoma county and state of Oklahoma to know and be informed that the above named A. J. Bemis, defendant, did in Oklahoma county, and in the state of Oklahoma, on the 23rd day of February, in the year of our Lord A. D. 1911, commit the crime of willfully, maliciously, designedly and unlawfully restraining certain employes of the Oklahoma Railway Company, a corporation, from membership in a labor union in manner and form as follows: For that he did then and there, as the general manager and agent of and on behalf of the Oklahoma Railway Company, a corporation, owning, operating and controlling a line of street railways into and through Oklahoma City, said county and state, cause and compel certain and divers persons whose names are

unknown to this affiant, to enter into a verbal agreement not to join and be members of a labor organization in Oklahoma City, said county and state, known as the Amalgamated Association of Street Railway Employees of America, as a condition of such persons continuing in the employment of the said Oklahoma Railway Company, a corporation, as aforesaid.

"Contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state."

Upon arraignment, the plaintiff in error filed a demurrer as follows:

"Comes now A. J. Bemis, defendant in the above entitled action, and hereby demurs to the information filed against him in said court on February 24, 1911, upon the following grounds, to-wit:

"1st.   For that said information fails to state facts sufficient to constitute a public offense.

"2nd.   For that the statute, to-wit, section 4041, Compiled Laws of Oklahoma, (1909), upon which said information is based, is null and void for the reason that the provisions of the same are in conflict with section 7, article 2 of the Constitution of the state of Oklahoma, providing that 'no person shall be deprived of life, liberty or property without due process of law;' and said statutory provisions are also null and void as being in conflict with section 2 of said article 2 of the Constitution of the state of Oklahoma, providing that 'all persons have the inherent right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry.'

"3rd.   For that the provisions of said section 4041 of the Compiled Laws of Oklahoma (1909), upon which said information is grounded, are null and void for the reason that they are in conflict with the following provisions of article 14 of the Amendments to the Constitution of the United States, to-wit:

"'Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'"

A number of questions were briefed and argued when this case was assigned for submission.   The determination of the question raising the validity of the statute is the only assignment which we shall undertake to discuss.   The statute complained of and which is the basis of the prosecution will be found in section 4041, Compiled Laws of 1909, and is as follows:

"Any person or corporation within the state, or agent, or officer on behalf of such person or corporation, who shall hereafter cause or compel any person to enter into an agreement either written or verbal, not to join or be a member of any labor organization as a condition of such person securing employment or continuing in the employment of any such person or corporation, shall be guilty of a misdemeanor, and upon conviction shall be fined a sum not less than two hundred dollars nor more than one thousand dollars, or imprisonment in the county jail not less than ninety days nor more than twelve months, or both such fine and imprisonment."

The question here to be considered was determined by the Supreme Court of the United States in *Coppage* v. *Kansas,* 236 U. S. 1; 59 L. Ed., 240. The statute construed in the Coppage case was as follows:

"That it shall be unlawful for any individual or member of any firm, or an agent, officer, or employee of any company or corporation, to coerce, require, demand, or influence any person or persons to enter into any agreement, either written or verbal, not to join or become or remain a member of any labor organization or association, as a condition of such person or persons securing employment, or continuing in the employment of such individual, firm, or corporation.

"Any individual or member of any firm, or any agent, officer, or employee of any company or corporation violating the provisions of this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than $50.00, or imprisoned in the county jail not less than thirty days."

A conviction of Coppage resulted in the trial court, and was affirmed by the Supreme Court of Kansas, 87 Kansas, 752; 125 Pac., 8. An appeal was prosecuted by Coppage to the Supreme Court of the United States, and the cause determined by that court as stated, *supra.* We quote from the opinion reversing the Kansas Supreme Court at length, on account of the fact that the discussion of the principle involved in the statute here in question is elaborate, and the doctrine enunciated is conclusive upon this court. The court after stating the issue, said:

"We have to deal, therefore, with a statute that, as construed and applied, makes it a criminal offense, punishable with fine or imprisonment, for an employer or his agent to merely prescribe, as a condition upon which one may secure certain employment or

remain in such employment (the employment being terminable at will), that the employee shall enter into an agreement not to become or remain a member of any labor organization while so employed; the employee being subject to no incapacity or disability, but, on the contrary, free to exercise a voluntary choice.

"In *Adair* v. *United States,* 208 U. S. 161, 52 L. ed. 436, 28 Sup. Ct. Rep. 277, 13 Ann. Cas. 764, this court had to deal with a question not distinguishable in principle from the one now presented. Congress, in article 10 of an act of June 1, 1898, entitled, 'An Act Concerning Carriers Engaged in Interstate Commerce and Their Employees' (30 Stat. at L. 424, 428, chap. 370), had enacted 'that any employer subject to the provisions of this act, and any officer, agent, or receiver of such employer, who shall require any employee, or any person seeking employment, as a condition of such employment, to enter into an agreement, either written or verbal, not to become or remain a member of any labor corporation, association, or organization; or shall threaten any employee with loss of employment, or shall unjustly discriminate against any employee because of his membership in such a labor corporation, association, or organization . . . is hereby declared to be guilty of a misdemeanor, and, upon conviction thereof . . . shall be punished for each offense by a fine of not less than one hundred dollars and not more than one thousand dollars.' Adair was convicted upon an indictment charging that he, as agent of a common carrier subject to the provisions of the act, unjustly discriminated against a certain employee by discharging him from the employ of the carrier because of his membership in a labor organization. The court held that portion of the act upon which the conviction rested to be an invasion of the personal liberty as well as of the right of property guaranteed by the 5th Amendment, which declares that no person shall be deprived of liberty or property without due process of law. Speaking by Mr. Justice Harlan, the court said (p. 174): 'While, as already suggested, the right of liberty and property guaranteed by the Constitution against deprivation without due process of law is subject to such reasonable restraints as the common good or the general welfare may require, it is not within the functions of government—at least, in the absence of contract between the parties—to compel any person in the course of his business and against his will to accept or retain the personal services of another; or to compel any person, against his will, to perform personal services for another. The right of a person to sell his labor upon such terms as he deems proper is, in its essence, the same as the right of the

purchaser of labor to prescribe the conditions upon which he will accept such labor from the person offering to sell it. So the right of the employee to quit the service of the employer, for whatever reason, is the same as the right of the employer, for whatever reason, to dispense with the services of such employee. It was the legal right of the defendant Adair—however unwise such a course might have been—to discharge Coppage (the employee in that case) because of his being a member of a labor organization, as it was the legal right of Coppage, if he saw fit to do so,—however unwise such a course on his part might have been,—to quit the service in which he was engaged, because the defendant employed some persons who were not members of a labor organization. In all such particulars the employer and the employee have equality of right, and any legislation that disturbs that equality is an arbitrary interference with the liberty of contract, which no government can legally justify in a free land.' "

Unless it is to be overruled, this decision is controlling upon the present controversy; for if Congress is prevented from arbitrary interference with the liberty of contract because of the "due process" provision of the 5th Amendment, it is too clear for argument that the states are prevented from the like interference by virtue of the corresponding clause of the 14th Amendment; and hence, if it be unconstitutional for Congress to deprive an employer of liberty or property for threatening an employee with loss of employment, or discriminating against him because of his membership in a labor organization, it is unconstitutional for a state to similarly punish an employer for requiring his employee, as a condition of securing or retaining employment, to agree not to become or remain a member of such an organization while so employed.

It is true that, while the statute that was dealt with in the Adair case contained a clause substantially identical with the Kansas act now under consideration,—a clause making it a misdemeanor for an employer to require an employee or applicant for employment, as a condition of such employment, to agree not to become or remain a member of a labor organization,—the conviction was based upon another clause, which related to discharging an employee because of his membership in such an

organization; and the decision, naturally, was confined to the case actually presented for decision. In the present case, the Kansas Supreme Court sought to distinguish the Adair decision upon this ground. The distinction, if any there be, has not previously been recognized as substantial, so far as we have been able to find. The opinion in the Adair case, while carefully restricting the decision to the precise matter involved, cited (208 U. S. on page 175), as the first in order of a number of decisions supporting the conclusion of the court, a case (*Pelple* v. *Marcus,* 185 N. Y. 257, 7 L. R. A. (N. S.) 282, 113 Am. St. Rep. 902, 77 N. E. 1073, 7 Ann. Cas. 188) in which the statute denounced as unconstitutional was in substance the counterpart of the one with which we are now dealing.

But, irrespective of whether it has received judicial recognition, is there any real distinction? The constitutional right of the employer to discharge an employee because of his membership in a labor union being granted, can the employer be compelled to resort to this extreme measure? May he not offer to the employee an option, such as was offered in the instant case, to remain in the employment if he will retire from the union; to sever the former relationship only if he prefers the latter? Granted the equal freedom of both parties to the contract of employment, has not each party the right to stipulate upon what terms only he will consent to the inception, or to the continuance of that relationship? And may he not insist upon an express agreement, instead of leaving the terms of the employment to be implied? Can the legislature in effect require either party at the beginning to act covertly; concealing essential terms of the employment—terms to which, perhaps, the other would not willingly consent—and revealing them only when it is proposed to insist upon them as a ground for terminating the relationship? Supposing an employer is unwilling to have in his employ one holding membership in a labor union, and has reason to suppose that the man may prefer membership in the union to the given employment without it—we ask, can the legislature oblige the employer in such case to refrain from dealing frankly at the

outset? And is not the employer entitled to insist upon equal frankness in return? Approaching the matter from a somewhat different standpoint, is the employee's right to be free to join a labor union any more sacred, or more securely founded upon the Constitution, than his right to work for whom he will, or to be idle if he will? And does not the ordinary contract of employment include an insistence by the employer that the employee shall agree, as a condition of the employment, that he will not be idle and will not work for whom he pleases, but will serve his present employer, and him only, so long as the relation between them shall continue? Can the right of making contracts be enjoyed at all, except by parties coming together in an agreement that requires each party to forego, during the time and for the purpose covered by the agreement, any inconsistent exercise of his constitutional rights?

These queries answer themselves. The answers, as we think, lead to a single conclusion: Under constitutional freedom of contract, whatever either party has the right to treat as sufficient ground for terminating the employment, where there is no stipulation on the subject, he has the right to provide against by insisting that a stipulation respecting it shall be a *sine qua non* of the inception of the employment, or of its continuance if it be terminable at will. It follows that this case cannot be distinguished from *Adair* v. *United States*.

The decision in that case was reached as the result of elaborate argument and full consideration. The opinion states (208 U. S. 171): "This question is admittedly one of importance, and has been examined with care and deliberation. And the court has reached a conclusion which, in its judgment, is consistent with both the words and spirit of the Constitution, and is sustained as well by sound reason." We are now asked, in effect, to overrule it; and in view of the importance of the issue we have re-examined the question from the standpoint of both reason and authority. As a result, we are constrained to reaffirm the doctrine there applied. Neither the doctrine nor this application of it is novel; we will endeavor to restate some

of the grounds upon which it rests. The principle is fundamental and vital. Included in the right of personal liberty and the right of private property—partaking of the nature of each—is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services, are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense. The right is as essential to the laborer as to the capitalist, to the poor as to the rich; for the vast majority of persons have no other honest way to begin to acquire property, save by working for money.

An interference with this liberty so serious as that now under consideration, and so disturbing of equality of right, must be deemed to be arbitrary, unless it be supportable as a reasonable exercise of the police power. But, notwithstanding the strong general presumption in favor of the validity of state laws, we do not think the statute in question, as construed and applied in this case, can be sustained as a legitimate exercise of that power. To avoid possible misunderstanding, we should here emphasize, what has been said before, that so far as its title or enacting clause expresses a purpose to deal with coercion, compulsion, duress, or other undue influence, we have no present concern with it, because nothing of that sort is involved in this case. As has been many times stated, this court deals not with moot cases or abstract questions, but with the concrete case before it. *California* v. *San Pablo & T. R. Co.* 149 U. S. 308, 314, 37 L. ed. 747, 748, 13 Sup. Ct. Rep. 876; *Richardson* v. *McChesney,* 218 U. S. 487, 492, 54 L. ed. 1121, 1122, 31 Sup. Ct. Rep. 43; *Missouri, K. & T. R. Co.* v. *Cade,* 233 U. S. 542, 648, 58 L. ed. 1135, 1137, 34 Sup. Ct. Rep. 678. We do not mean to say, therefore, that a state may not properly exert its police power to prevent coercion on the part of employers towards employees, or vice versa. But, in this case, the Kansas court of last resort has held that Coppage, the plaintiff in error, is a criminal, punishable with fine or imprisonment under this statute,

simply and merely because, while acting as the representative of the railroad company, and dealing with Hedges, an employee at will and a man of full age and understanding, subject to no restraint or disability, Coppage insisted that Hedges should freely choose whether he would leave the employ of the company or would agree to refrain from association with the union while so employed. This construction is, for all purposes of our jurisdiction, conclusive evidence that the state of Kansas intends by this legislation to punish conduct such as that of Coppage, although entirely devoid of any element of coercion, compulsion, duress, or undue influence, just as certainly as it intends to punish coercion and the like. But, when a party appeals to this court for the protection of rights secured to him by the Federal Constitution, the decision is not to depend upon the form of the state law, nor even upon its declared purpose, but rather upon its operation and effect as applied and enforced by the state; and upon these matters this court cannot, in the proper performance of its duty, yield its judgment to that of the state court. *St. Louis South Western R. Co.* v. *Arkansas,* 235 U. S. 350, 362, *ante,* 99, 35 Sup. Ct. Rep. 99, and cases cited. Now, it seems to us clear that a statutory provision which is not a legitimate police regulation cannot be made such by being placed in the same act with a police regulation, or by being enacted under a title that declares a purpose which would be a proper object for the exercise of that power. "Its true character cannot be changed by its collocation," as Mr. Justice Grier said in the Passenger Cases, 7 How. 458, 12 L. ed. 775. It is equally clear, we think, that to punish an employer or his agent for simply proposing certain terms of employment, under circumstances devoid of coercion, duress, or undue influence, has no reasonable relation to a declared purpose of repressing coercion, duress, and undue influence. Nor can a state, by designating as "coercion" conduct which is not such in truth, render criminal any normal and essentially innocent exercise of personal liberty or of property rights; for to permit this would deprive the 14th Amendment of its effective force in this regard. We, of course,

do not intend to attribute to the legislature or the courts of Kansas any improper purpose or any want of candor; but only to emphasize the distinction between the form of the statute and its effect as applied to the present case.

Laying aside, therefore, as immaterial for present purposes, so much of the statute as indicates a purpose to repress coercive practices, what possible relation has the residue of the act to the public health, safety, morals, or general welfare? None is suggested, and we are unable to conceive of any. The act, as the construction given to it by the state court shows, is intended to deprive employers of a part of their liberty of contract, to the corresponding advantage of the employed and the upbuilding of the labor organizations. But no attempt is made, or could reasonably be made, to sustain the purpose to strengthen these voluntary organizations, any more than other voluntary associations of persons, as a legitimate object for the exercise of the police power. They are not public institutions, charged by law with public or governmental duties, such as would render the maintenance of their membership a matter of direct concern to the general welfare. If they were, a different question would be presented.

As to the interest of the employed, it is said by the Kansas Supreme Court (87 Kans. 759, 125 Pac. 10) to be a matter of common knowledge that "employees, as a rule, are not financially able to be as independent in making contracts for the sale of their labor as are employers in making a contract of purchase thereof." No doubt, wherever the right of private property exists, there must and will be inequalities of fortune; and thus it naturally happens that parties negotiating about a contract are not equally unhampered by circumstances. This applies to all contracts, and not merely to that between employer and employee. Indeed, a little reflection will show that wherever the right of private property and the right of free contract coexist, each party when contracting is inevitably more or less influenced by the question whether he has much property, or little, or none; for the contract is made to the very end that each may gain something that he needs or desires more

urgently than that which he proposes to give in exchange. And, since it is self-evident that, unless all things are held in common, some persons must have more property than others, it is from the nature of things impossible to uphold freedom of contract and the right of private property without at the same time recognizing as legitimate those inequalities of fortune that are the necessary result of the exercise of those rights. But the 14th Amendment, in declaring that a state shall not "deprive any person of life, liberty, or property without due process of law," gives to each of these an equal sanction; it recognizes "liberty" and "property" as coexistent human rights, and debars the states from any unwarranted interference with either.

And since a state may not strike them down directly, it is clear that it may not do so indirectly, as by declaring in effect that the public good requires the removal of those inequalities that are but the normal and inevitable result of their exercise, and then invoking the police power in order to remove the inequalities, without other object in view. The police power is broad, and not easily defined, but it cannot be given the wide scope that is here asserted for it, without in effect nullifying the constitutional guaranty.

We need not refer to the numerous and familiar cases in which this court has held that the power may properly be exercised for preserving the public health, safety, morals, or general welfare, and that such police regulations may reasonably limit the enjoyment of personal liberty, including the right of making contracts. They are reviewed in *Holden* v. *Hardy,* 169 U. S. 366, 391, 42 L. ed. 780, 790, 18 Sup. Ct. Rep., 383; *Chicago, B. & Q. R. Co.* v. *McGuire,* 219 U. S. 549, 566, 55 L. ed. 328, 338, 31 Sup. Ct. Rep. 259; *Erie R. Co.* v. *Williams,* 233 U. S. 685, 58 L. ed. 1155, 34 Sup. Ct. Rep. 761; 51 L. R. A. N. S.) 1097; and other recent decisions. An evident and controlling distinction is this: that in those cases it has been held permissible for the states to adopt regulations fairly deemed necessary to secure some object directly affecting the public welfare, even though the enjoyment of private rights of liberty and property be thereby incidentally hampered; while

in that portion of the Kansas statute which is now under consideration—that is to say, aside from coercion, etc.—there is no object or purpose, expressed or implied, that is claimed to have reference to health, safety, morals, or public welfare, beyond the supposed desirability of leveling inequalities of fortune by depriving one who has property of some part of what is characterized as his "financial independence." In short, an interference with the normal exercise of personal liberty and property rights is the primary object of the statute, and not an incident to the advancement of the general welfare. But, in our opinion, the 14th Amendment debars the states from striking down personal liberty or property rights, or materially restricting their normal exercise, excepting so far as may be incidentally necessary for the accomplishment of some other and paramount object, and one that concerns the public welfare. The mere restriction of liberty or of property rights cannot of itself be denominated "public welfare," and treated as a legitimate object of the police power; for such restriction is the very thing that is inhibited by the Amendment.

It is said in the opinion of the state court that membership in a labor organization does not necessarily affect a man's duty to his employer; that the employer has no right, by virtue of the relation, "to dominate the life nor to interfere with the liberty of the employee in matters that do not lessen or deteriorate the service;" and that "the statute implies that labor unions are lawful and not inimical to the rights of employers." The same view is presented in the brief of counsel for the state where it is said that membership in a labor organization is the "personal and private affair" of the employee. To this line of argument it is sufficient to say that it cannot be judicially declared that membership in such an organization has no relation to a member's duty to his employer; and therefore, if freedom of contract is to be preserved, the employer must be left at liberty to decide for himself whether such membership by his employee is consistent with the satisfactory performance of the duties of the employment.

Of course, we do not intend to say, nor to intimate, anything inconsistent with the right of individuals to join labor unions, nor do we question the legitimacy of such organizations so long as they conform to the laws of the land as others are required to do. Conceding the full right of the individual to join the union, he has no inherent right to do this and still remain in the employ of one who is unwilling to employ a union man, any more than the same individual has a right to join the union without the consent of that organization. Can it be doubted that a labor organization—a voluntary association of working men—has the inherent and constitutional right to deny membership to any man who will not agree that during such membership he will not accept or retain employment in company with non-union men? Or that a union man has the constitutional right to decline proffered employment unless the employer will agree not to employ any non-union man? (In all cases we refer, of course, to agreements made voluntarily, and without coercion or duress as between the parties. And we have no reference to questions of monopoly, or interference with the rights of third parties or the general public. These involve other considerations, respecting which we intend to intimate no opinion. See *Curran* v. *Galen,* 152 N. Y. 33, 37 L. R. A. 802, 57 Am. St. Rep. 496, 46 N. E. 297; *Jacobs* v. *Cohen,* 183 N. Y. 207, 213, 214, 2 L. R. A. (N. S.) 292, 111 Am. St. Rep. 730, 76 N. E. 5, 5 Ann. Cas. 280; *Plant* v. *Woods,* 176 Mass. 492, 51 L. R. A. 339, 79 Am. St. Rep. 330, 57 N. E. 1011; *Berry* v. *Donovan,* 188 Mass. 353, 5 L. R. A. (N. S.) 899, 108 Am. St. Rep. 499, 74 N. E. 603, 3 Ann. Cas. 738; *Brennan* v. *United Hatters,* 73 N. J. L. 729, 738, 9 L. R. A. (N. S.) 254, 118 Am. St. Rep. 727, 65 Atl. 165, 169, 9 Ann. Cas. 698, 702). And can there be one rule of liberty for the labor organization and its members, and a different and more restrictive rule for employers? We think not; and since the relation of employer and employee is a voluntary relation, as clearly as is that between the members of a labor organization, the employer has the same inherent right to prescribe the terms upon which he will consent to the relationship, and to have them fairly understood and expressed in advance.

When a man is called upon to agree not to become or remain a member of the union while working for a particular employer, he is in effect only asked to deal openly and frankly with his employer, so as not to retain the employment upon terms to which the latter is not willing to agree. And the liberty of making contracts does not include a liberty to procure employment from an unwilling employer, or without a fair understanding. Nor may the employer be foreclosed by legislation from exercising the same freedom of choice that is the right of the employee.

To ask a man to agree, in advance, to refrain from affiliation with the union while retaining a certain position of employment, is not to ask him to give up any part of his constitutional freedom. He is free to decline the employment on those terms, just as the employer may decline to offer employment on any other; for "it takes two to make a bargain." Having accepted employment on those terms, the man is still free to join the union when the period of employment expires; or, if employed at will, then at any time upon simply quitting the employment. And, if bound by his own agreement to refrain from joining during a stated period of employment, he is in no different situation from that which is necessarily incident to term contracts in general. For constitutional freedom of contract does not mean that a party is to be as free after making a contract as before; he is not free to break it without accountability. Freedom of contract, from the very nature of the thing, can be enjoyed only by being exercised; and each particular exercise of it involves making an engagement which, if fulfilled, prevents for the time any inconsistent course of conduct.

So much for the reason of the matter; let us turn again to the adjudicated cases.

The decision in the Adair case is in accord with the almost unbroken current of authorities in the state courts. In many states enactments not distinguishable in principle from the one now in question have been passed, but, except in two instances, (one, the decision of an inferior court in Ohio, since repudiated; the other, the decision now under review), we are unable to find

that they have been judicially enforced. It is not too much to say that such laws have by common consent been treated as unconstitutional, for while many state courts of last resort have adjudged them void, we have found no decision by such a court sustaining legislation of this character, excepting that which is now under review. The single previous instance in which any court has upheld such a statute is *Davis* v. *State* (1893) 30 Ohio L. J. 342, 11 Ohio Dec. Reprint, 894, where the court of common pleas of Hamilton county sustained an act of April 14, 1892, (89 Ohio Laws, 269), which declared that any person who coerced or attempted to coerce employees by discharging or threatening to discharge them because of their connection with any lawful labor organization should be guilty of a misdemeanor, and upon conviction fined or imprisoned. We are unable to find that this decision was ever directly reviewed; but in *State* v. *Bateman* (1900) 10 Ohio S. & C. P. Dec. 68, 7 Ohio N. P. 487, its authority was repudiated upon the ground that it had been in effect overruled by subsequent decisions of the state Supreme Court, and the same statute was held unconstitutional.

The right that plaintiff in error is now seeking to maintain was held by the Supreme Court of Kansas, in an earlier case, to be within the protection of the 14th Amendment, and therefore beyond legislative interference. In *Coffeyville Vitrified Brick & Tile Co.* v. *Perry*, 69 Kan. 297, 66 L. R. A. 185, 76 Pac. 848, 1 Ann. Cas. 936, the court had under consideration chapter 120 of the Laws of 1897 (Gen. Stat. 1901, Secs. 2425, 2426), which declared it unlawful for any person, company, or corporation, or agent, officer, etc., to prevent employees from joining and belonging to any labor organization, and enacted that any such person, company, or corporation, etc., that coerced or attempted to coerce employees by discharging or threatening to discharge them because of their connection with such labor organization should be deemed guilty of a misdemeanor, and upon conviction subjected to a fine, and should also be liable to the person injured in punitive damages. It was attacked as violative of the 14th Amendment, and also of the Bill of Rights of the state Consti-

tution. The court held it unconstitutional, saying: "The right to follow any lawful vocation and to make contracts is as completely within the protection of the Constitution as the right to hold property free from unwarranted seizure, or the liberty to go when and where one will. One of the ways of obtaining property is by contract. The right, therefore, to contract cannot be infringed by the legislature without violating the letter and spirit of the Constitution. Every citizen is protected in his right to work where and for whom he will. He may select not only his employer, but also his associates. He is at liberty to refuse to continue to serve one who has in his employ a person, or an association of persons, objectionable to him. In this respect the rights of the employer and employee are equal. Any act of the legislature that would undertake to impose on an employer the obligation of keeping in his service one whom, for any reason, he should not desire, would be a denial of his constitutional right to make and terminate contracts and to acquire and hold property. Equally so would be an act the provisions of which should be intended to require one to remain in the service of one whom he should not desire to serve. . . . The business conducted by the defendant was its property, and in the exercise of his ownership it is protected by the Constitution. It could abandon or discontinue its operation at pleasure. It had the right, beyond the possibility of legislative interference, to make any contract with reference thereto not in violation of law. In the operation of its property it may employ such persons as are desirable, and discharge, without reason, those who are undesirable. It is at liberty to contract for the services of persons in any manner that is satisfactory to both. No legislative restrictions can be imposed upon the lawful exercise of these rights."

In *Atchison, T. & S. F. R. Co.* v. *Brown,* 80 Kan. 312, 23 L. R. A. (N. S.) 247, 133 Am. St. Rep. 213, 102 Pac. 459; 18 Ann. Cas. 346, the same court passed upon chapter 144 of the Laws of 1897 (Gen. Stat. 1901, Secs. 2421-2424), which required the employer, upon the request of a discharged employee, to furnish in writing the true cause or reason for such discharge.

The railway company did not meet this requirement, its "service letter," as it was called, stating only that Brown was discharged "for cause," which the court naturally held was not a statement of the cause. The law was held unconstitutional, upon the ground (80 Kan. 315), *supra,* that an employer may discharge his employee for any reason, or for no reason, just as an employee may quit the employment for any reason, or for no reason; that such action on the part of employer or employee, where no obligation is violated, is an essential element of liberty in action; and that one cannot be compelled to give a reason or cause for an action for which he may have no specific reason or cause, except, perhaps, a mere whim or prejudice.

In the present case the court did not repudiate or overrule these previous decisions, but, on the contrary, cited them as establishing the right of the employer to discharge his employee at any time, for any reason, or for no reason, being responsile in damages for violating a contract as to the time of employment, and as establishing, conversely, the right of the employee to quit the employment at any time, for any reason, or without any reason, being likewise responsible in damages for a violation of his contract with the employer. The court held the act of 1903 (Laws 1903, sec. 222) that is now in question to be distinguishable from the act of 1897; upon grounds sufficiently indicated and answered by what we have already said.

In five other states the courts of last resort have had similar acts under consideration, and in each instance have held them unconstitutional. In *State* v. *Julow* (1895) 129 Mo. 163, 29 L. R. A. 257, 50 Am. St. Rep. 443, 31 S. W. 781, the Supreme Court of Missouri dealt with an act (Missouri Laws 1893, p. 187) that forbade employers, on pain of fine or imprisonment, to enter into any agreement with an employee requiring him to withdraw from a labor union or other lawful organization, or to refrain from joining such an organization, or to "by any means attempt to compel or coerce any employee into withdrawal from any lawful organization or society." In *Gillespie* v. *People* (1900) 188 Ill. 176, 52 L. R. A. 283, 80 Am. St. Rep. 176, 58 N. E. 1007,

the Supreme Court of Illinois held unconstitutional an act (Hurd's Stat. 1899, p. 844) declaring it criminal for any individual or member of any firm, etc., to prevent or attempt to prevent employees from forming, joining, and belonging to any lawful labor organization, and that any such person "that coerces or attempts to coerce employees by discharging or threatening to discharge them because of their connection with such lawful labor organization" should be guilty of a misdemeanor. In *State ex rel. Zillmer* v. *Kreutzberg* (1902) 114 Wis. 530, 58 L. R. A. 748, 91 Am. St. Rep. 934, 90 N. W. 1098, the court had under consideration a statute (Wisconsin Laws 1899, chap. 332) which, like the Kansas act now in question, prohibited the employer or his agent from coercing the employee to enter into an agreement not to become a member of a labor organization, as a condition of securing employment or continuing in the employment, and also rendered it unlawful to discharge an employee because of his being a member of any labor organization. The decision related to the latter prohibition, but this was denounced upon able and learned reasoning that has a much wider reach. In *People* v. *Marcus* (1906) 185 N. Y. 257, 7 L. R. A. (N. S.) 282, 113 Am. St. Rep. 902, 77 N. E. 1073, 7 Ann. Cas. 118, the statute dealt with (N. Y. Laws 1887, chap. 688), as we have already said, was in substance identical with the Kansas act. These decisions antedated *Adair* v. *United States*. They proceed upon broad and fundamental reasoning, the same in substance that was adopted by this court in the Adair case, and they are cited with approval in the opinion (208 U. S. 175). A like result was reached in *State ex rel. Smith* v. *Daniels* (1912) 118 Minn. 155, 136 N. W. 584, with respect to an act that, like the Kansas statute forbade an employer to require an employee or person seeking employment, as a condition of such employment, to make an agreement that the employee would not become or remain a member of a labor organization. This was held invalid upon the authority of the Adair case. And see *Goldfield Consol. Mines Co.* v. *Goldfield Miners' Union*, 159 Fed. 500, 513.

Upon both principle and authority, therefore, we are constrained to hold that the Kansas act of March 13, 1903 (Laws 1903, sec. 222), as construed and applied so as to punish with fine or imprisonment an employer or his agent for merely prescribing, as a condition upon which one may secure employment under or remain in the service of such employer, that the employee shall enter into an agreement not to become or remain a member of any labor organization while so employed, is repugnant to the "due process" clause of the 14th Amendment, and therefore void."

The foregoing discussion and conclusion therein reached by the highest of courts leaves little to be said by us. It is our plain duty—in fact we have no alternative, except to follow the doctrine declared therein. It follows, therefore, that the statute in question is repugnant to the "due process" clause of the 14th Amendment to the Constitution of the United States, and is therefore void.

The judgment is reversed and the cause remanded with direction to dismiss.

DOYLE, P. J., and FURMAN, J., concur.