# FIRST STATE BANK OF HUGO v. FEDERAL RESERVE BANK OF MINNEAPOLIS.[1]

June 8, 1928.

No. 26,640.

**Action for damages on ground of coercion.**
1. To sustain an action for damages on the ground of coercion there must be some wrongful or unlawful act, acts or conduct on the part of the defendant sufficient to constrain the plaintiff, against his will, to do or refrain from doing something which he has a legal right to do or refuse to do, and resulting in damage to him.

**Duty of federal reserve bank in respect to receiving checks for collection.**
2. A federal reserve bank is required to receive on deposit for collection at par, from member banks of the federal reserve system, checks payable on presentation drawn upon any member bank in its district. It is authorized but not required so to receive checks upon nonmember banks within its district. Federal reserve banks are not authorized to pay exchange on checks collected by them.

**Federal reserve act does not prevent nonmember state banks charging exchange.**
3. State banks, not members of the federal reserve system, are not affected by the provisions of the federal reserve act against charging exchange, and may continue to demand exchange on remittances made by them.

**Under what circumstances reserve bank may present checks on nonmember bank at its counter for payment.**
4. Where a nonmember bank declines to remit at par, the federal reserve bank may present checks for payment at the counter of such bank and employ proper agencies for so doing, subject to the limitations that it may not delay presentation so as to accumulate checks in a body in a large amount for presentation at one time for the purpose of coercing or injuring the bank, or employ other unreasonable and oppressive means or threats in the collection thereof.

**Publication of par list by reserve bank.**
The publication of a list, known as a par list, stating that defendant

[1] Reported in 219 N. W. 908.

reserve bank will receive for credit and collection checks upon all banks in Minnesota, *held* not wrongful or oppressive, although not all banks in the state had consented to remit at par.

**Finding of coercion not sustained by evidence.**

5. *Held* that there is no evidence to sustain a finding of coercion in the present case.

Banks and Banking, 7 C. J. p. 910 n. 40.
Threats, 38 Cyc. p. 300 n. 9.

---

See 9 R. C. L. 711; 2 R. C. L. Supp. 861; 4 R. C. L. Supp. 621; 6 R. C. L. Supp. 517; 7 R. C. L. Supp. 306
See note in 30 A. L. R. 647; 31 A. L. R. 1269.

Defendant appealed from an order of the district court for Hennepin county, Montgomery, J. denying its alternative motion for judgment or a new trial. Reversed.

*A. Ueland, Ueland & Ueland,* and *Newton D. Baker,* for appellant.
*Sullivan & Neumeier* and *Charles T. Murphy,* for respondent.

OLSEN, C.

Defendant appeals from an order denying its alternative motion for judgment or a new trial.

The action was brought to recover damages from the defendant for the alleged coercion of plaintiff thereby compelling and forcing plaintiff against its will to agree to and remit to defendant for all checks sent to plaintiff by mail, drawn upon plaintiff bank, without making any exchange charge.

The defendant is a federal reserve bank located at Minneapolis in this state. Plaintiff is a small state bank with a capital of $10,000, located in the village of Hugo about 25 miles from Minneapolis, and the only bank in that village. It is not a member of the federal reserve system but is located in defendant's district.

Plaintiff recovered a verdict. Defendant contends that there was no evidence presented justifying the submission of the question of coercion to the jury; that there was no evidence of any wrongful or unlawful conduct on its part; and no evidence that plaintiff acted under coercion or duress in the matter, hence defendant was entitled to a verdict and judgment in its favor.

1. The term "coercion" is somewhat difficult to define with sufficient exactness to apply to all cases. It is said to be compulsion, force or duress. It is said to exist where one, by the unlawful act of another, is induced to do or perform some act under circumstances which deprive him of the exercise of his free will. 11 C. J. 946, 947. This definition is adopted in State ex rel. Young v. Ladeen, 104 Minn. 252, 116 N. W. 486, 16 L.R.A. (N.S.) 1058. In State ex rel. Smith v. Daniels, 118 Minn. 155, 136 N. W. 584, coercion is stated to be either physical force, used to compel a person to act against his will, or implied legal force, where one is so under subjection of another that he is constrained to do what his free will would refuse, and that coercion is usually accomplished by indirect means, such as threats or intimidation. Coercion as a misdemeanor is defined by G. S. 1923, § 10431, which provides that every person who, with intent to compel another to do or abstain from doing an act which such other person has a legal right to do, or abstain from doing, shall wrongfully and unlawfully attempt to intimidate such person by threats or force shall be guilty of a misdemeanor.

To sustain an action for damages on the ground of coercion, there must be some wrongful or unlawful act, acts or conduct on the part of the defendant sufficient to constrain the plaintiff, against his will, to do or refrain from doing something which he has a legal right to do or refuse to do, and resulting in damage to him. The acts or conduct complained of need not be unlawful in the technical sense of that term. It is sufficient if same is wrongful in the sense that it is so oppressive under given circumstances as to constrain one to do what his free will would refuse.

2. Federal reserve banks are required to receive on deposit at par from member banks and reserve banks checks and drafts upon any of its member banks. They are authorized so to receive checks, payable on presentation, upon any bank within their respective districts, whether such bank is a member bank or not. No exchange charge can be made against the reserve banks by member banks, and the reserve banks are not to pay exchange. The result is a system of par clearance of checks and items among member banks and between such banks and the reserve banks.

3. These provisions as to exchange are held not to apply to nonmember state banks, and such banks are not compelled to forego any rights they 'may have under state laws and may continue to charge exchange. Where checks on a nonmember bank were presented to a reserve bank for deposit and collection, the reserve bank could not accept or clear such checks unless either the nonmember bank agreed to remit therefor at par, without charging exchange, or the reserve bank, at its own expense, employed other agencies to collect same by presentation for payment at the banking house of the nonmember bank. In this situation the federal reserve board and reserve banks sought to have a system of par clearance agreed to and adopted by the nonmember state banks so as to include all banks and banking institutions in the United States. Letters and circulars were sent out by the board and the reserve banks explaining the system and urging nonmember banks to agree to remit to reserve banks without exchange charge. Many state banks agreed; others refused. Par lists were prepared and sent out by the board through the reserve banks showing towns and cities where all banks remitted at par; and, where not all so remitted, the names of banks not so doing were given. Where all banks in a state so remitted, the name of the state was given.

4. Negotiations were carried on by defendant by correspondence with plaintiff in the matter. On July 31, 1919, defendant sent plaintiff a circular letter stating that it was making a final appeal and that if no reply was received it would be assumed that plaintiff preferred to have checks drawn on it and received by defendant presented at plaintiff's counter for payment in cash. On March 30, 1920, defendant wrote to plaintiff stating that as it had received no reply to a letter of March 10 it assumed that plaintiff would remit at par, and that on April 15 it would commence sending regular remittances with the understanding that plaintiff would remit in payment without exchange charges. A par list was issued by the reserve board under date of April 1, 1920, stating that the reserve bank would receive for collection and credit items on all banks in Minnesota.

Upon receipt of defendant's letter of March 30, plaintiff wrote on the bottom thereof the statement that it did not wish to be on the par list and would continue to charge exchange, and returned such letter and statement to defendant. The exact date when this was received by defendant does not appear. On April 12 the defendant wrote to plaintiff acknowledging receipt and expressing regrets. In this letter defendant called attention to the fact that the reserve bank was prohibited from paying exchange, and stated that where a nonmember bank refused to remit at par the reserve bank would be forced to seek some other method and through some agency present checks and drafts at the bank's counter for payment in cash. The letter further stated that it had been said that it was defendant's practice to hold back items until they amounted to a considerable sum and then, for the purpose of embarrassing the bank, present them on one day. It assured plaintiff that this was not the case and that it had no desire to cause any unnecessary inconvenience; that it might be possible, if it received items amounting to less than $100 on one day, that it would hold such items for a day or two to save unnecessary expense.

The defendant then, on or about April 17, adopted the method of turning over checks in its hands on the plaintiff bank to the American Railway Express Company for collection. That company, as part of its business, collects and transmits money for compensation. A few days later, on or about April 28, it changed agencies and employed the postmaster at Hugo to collect and transmit such collections by mail. These two agencies presented checks on plaintiff bank, coming into defendant's hands, daily at plaintiff's counter from April 17 to 30, inclusive, and received payment therefor in cash. The evidence tends to show that defendant was willing to receive drafts on plaintiff's correspondent bank instead of cash, if plaintiff had so requested. Plaintiff's correspondent bank at the time was the Merchants National Bank of St. Paul, located adjacent to Minneapolis and somewhat nearer to plaintiff's place of business than Minneapolis. The amount of checks so presented varied from day to day and ran in amounts from $100 to $1,200.

On April 30 plaintiff wrote to defendant that it might discontinue sending checks to be cashed over the counter; that plaintiff had decided to remit at par by draft, and that defendant might send the checks by mail in the usual way. Thereafter plaintiff continued to remit to defendant at par, by draft on its correspondent, for checks and items sent to it by defendant by mail from day to day until October 1, 1924. On September 25, 1924, plaintiff informed defendant by letter that on October 1 it intended again to charge exchange. Thereupon defendant ceased to accept for collection checks on plaintiff bank, and on the par list issued under date of October 1 plaintiff was listed as withdrawn from the list. During the ten days that defendant had its checks presented for payment in cash at plaintiff's banking house no difficulty arose. The presentation was courteous and orderly; so far as appears plaintiff suffered no injury or embarrassment; relations were apparently friendly.

There is evidence that the reserve banks were conducting what is called a campaign to induce nonmember banks to agree to remit at par; that placing Minnesota banks on the par list resulted in bringing to defendant bank a large number of checks drawn on nonmember banks and on this plaintiff; that the gathering of such checks in defendant's hands and presentation thereof at plaintiff's counter for payment required plaintiff to keep a larger cash reserve on hand than otherwise necessary and resulted in the loss of interest which it could have earned by keeping more of its reserve in its correspondent bank. It is urged also that plaintiff feared and had cause to fear that on some days so large an aggregate amount of checks might come to the reserve bank and be presented for payment in cash that the plaintiff would be unable to pay them and be forced to suspend. As evidence of that, it is shown that during the four and a half years that plaintiff remitted to defendant at par there were two days on which checks aggregating slightly over $8,000 each day were mailed to it by defendant for payment by draft on plaintiff's correspondent; and on a number of other days checks aggregating over $3,000 were so received. The answer to that is the

uncontradicted evidence of defendant's officer that it would readily have accepted drafts on plaintiff's correspondent bank instead of cash at any time if inconvenient for plaintiff to pay in cash. It is further to be noted that plaintiff's place of business is not over 20 miles distant from its correspondent bank in St. Paul, where it carried its reserve, and funds were available from that source within an hour, if needed.

The case of American B. & Tr. Co. v. Federal Res. Bank of Atlanta, 262 U. S. 643, 43 S. Ct. 649, 67 L. ed. 1153, is of interest. In that case a number of state banks in Georgia brought suit to enjoin the reserve bank from publishing their names in the par list and to enjoin it from collecting checks on them by presenting such checks by its agents for payment at the counter of these banks in cash, or collecting such checks otherwise than in the usual way, which was alleged to be by mailing them to the bank upon which drawn and accepting remittance therefor by draft, less exchange. We infer there was the usual prayer for other and further relief. The federal district court dismissed the case for insufficiency of the complaint, and the decision was affirmed by the circuit court of appeals. The case then came before the United States Supreme Court, reported in 256 U. S. 350, 41 S. Ct. 499, 65 L. ed. 983. It was there held that the complaint stated a cause of action in that it alleged that defendant intended to accumulate checks in large amounts and present them at one time in a body for the purpose of injuring and coercing the plaintiff and breaking down its business, and the decree of dismissal was reversed. The case was then tried in the district court and is reported in 280 F. 940. The trial court granted an injunction restraining the defendant from including the names of plaintiffs in the par list and denied any other relief. It was held that the reserve bank, in the exercise of its clearing house functions, was authorized to accept any and all checks payable on presentation when deposited with it for collection; that checks so accepted must be collected by it at par; that it was not permitted to accept less than full face value; that it was authorized to adopt any reasonable measure for these purposes; that;

if the drawee bank refused to remit without exchange charge, the reserve bank had power to employ any proper agency to collect the checks from the drawee bank and to pay the necessary cost of such service; that the daily collection of such checks did not constitute any accumulation thereof and was lawful; that it was proper for such bank to publish a par clearance list, but not to place thereon the name of a nonmember bank without its consent. The court further found that there was no evidence to sustain any charge that the reserve bank had acted illegally or exercised any of its rights so as to oppress or injure the plaintiffs. This decision was affirmed by the circuit court of appeals, 284 F. 424. It came again before the United States Supreme Court, 262 U. S. 643, 43 S. Ct. 649, 67 L. ed. 1153, and was affirmed. In that decision it is stated that the decree left the reserve bank free to publish in its par list that it would collect at par checks on all banks in any town, that is, it might name the town or city as one wherein it collected checks at par, although there were banks in that town or city which would not remit at par, so long as it did not publish the names of such banks. Here, in our present case, the par list complained of did not even name the town in which plaintiff bank is located, but named merely the state of Minnesota as a district in which defendant would collect checks at par. The court further states in the Atlanta bank case, 262 U. S. 643, 43 S. Ct. 649, 67 L. ed. 1153, that federal reserve banks are authorized to collect for member banks and affiliated nonmember banks checks on any banks within their respective districts, if the checks are payable on presentation and can in fact be collected consistently with the legal rights of the drawee without paying an exchange charge; that, within these limits, reserve banks have ordinarily the same right to present checks to the drawee bank for payment over the counter as any other bank, state or national, would have. The limitations referred to are that the reserve bank may not accumulate checks for presentation or make other unreasonable or oppressive demands or threats in connection with the collection for the purpose of injuring the drawee bank or compelling it to agree to remit without

exchange. The court states that the advantages offered by the reserve banks have created a steady flow in increased volume of checks on country banks to the reserve banks, and that collecting such checks over the counter will subject the country banks to certain losses of exchange and interest, but that country banks are not entitled to protection against legitimate competition and such losses are of the kind to which business concerns are commonly subjected when improved facilities are introduced by others or a more efficient competitor enters the field.

It is urged that the reserve banks had adopted a plan to coerce and compel country banks to remit at par and that defendant, in what it did, was engaged in carrying out such unlawful purpose, and that plaintiff was thereby coerced and compelled to act against its free will. A wrongful purpose or intent alone cannot constitute coercion. There must be threats or oppressive acts or conduct sufficient to overcome the will and constrain the one coerced to go against his free will. There were here no threats, wrongful publication of par lists, accumulation of checks, or other oppressive conduct.

Brookings State Bank v. Federal Res. Bank of San Francisco (D. C.) 277 F. 430, 281 F. 222, was a case where the reserve bank treated checks as dishonored where plaintiff refused to remit at par by mail and so informed its clients. This was held wrongful and defendant enjoined from sending letters to its clients advising them that they must look to plaintiff bank for protection for its failure to protest the checks.

Farmers & Mer. Bank of Catlettsburg v. Federal Res. Bank of Cleveland (D. C.) 286 F. 610, is cited. A mere reading of the statement of facts in that case shows that the collection of checks there was accompanied by such disturbance, threats, armed messenger, interference with the bank's customers and business, public display of checks and claims against the bank, espionage and such words and acts of oppression as clearly to render the defendant's conduct wrongful and unlawful. The holding of the federal district court, that defendant should be enjoined from continuing so to collect checks drawn on plaintiff bank and from advertising that it would

collect such checks free of charge, must be held to be limited to the facts in the case. That case was decided by the district court before the final decision by the Supreme Court in the Atlanta bank case.

The case of Farmers & Mer. Bank of Monroe v. Federal Res. Bank of Richmond, 262 U. S. 649, 43 S. Ct. 651, 67 L. ed. 1157, 30 A. L. R. 635, was decided at the same time and the opinion written by the same justice as in the Atlanta bank case. It does not change or modify the holdings in that case. The question there decided was the constitutionality of a state statute authorizing state banks to pay their checks, when presented by a federal reserve bank or its agents, in exchange drawn on the reserve deposits of the drawee bank. The law was held constitutional. While the federal reserve act is construed as applied to that situation, it is so construed in harmony with the Atlanta bank case.

Primarily the benefit from having checks cleared at par goes to the makers of such checks, the customers of the bank upon which they are drawn. If such a customer can send his check to another city or place in payment of his debts or purchases and have the check cleared at par, he saves money and inconvenience, saves purchasing a draft and paying the exchange thereon. He cannot compel his debtor or obligee at the other end to accept his check subject to exchange charges. His bank is to that extent favoring him and incidentally attracting customers to itself.

5. This case has been fully and fairly tried. Our conclusion is that there is no evidence justifying the jury in finding that there was coercion. Defendant therefore was entitled to a directed verdict and to judgment notwithstanding the verdict.

The order appealed from is reversed with direction to have judgment entered for defendant.