SEARS, ROEBUCK & CO. et al.
v. DEVINE.

Court of Appeals of Kentucky.
Feb. 6, 1953.

Woodward, Bartlett & McCarroll, Owensboro, Waldemar D. Bratcher, Greenville, Ernest Woodward, Louisville, for appellant..

Russell O'Neill, Central City, for appellee.

COMBS, Justice.

The defendant Medley, as agent for his co-defendant Sears, Roebuck & Company, went to the home of plaintiff to repossess a washing machine and cooking stove which had been purchased from the Company on the installment plan. It is alleged in the petition that Medley "did illegally and unlawfully * * * coerce, intimidate and frighten this plaintiff into assisting him in loading" the equipment into a truck; that plaintiff was pregnant at the time and as a result of the exertion caused by lifting the equipment suffered a miscarriage. The defendants appeal from a judgment of $1,000 based on a jury's verdict for the plaintiff.

The criticism of the petition is that the allegations of coercion and intimidation are conclusions of the pleader and, therefore, insufficient. Most courts hold that general allegations of duress, coercion, threats and compulsion are mere conclusions and are insufficient, in the absence of a statement of facts upon which the conclusions are based. Anno. 119 A.L.R. 997. Although there is grave doubt about the sufficiency of the petition, we do not pass on that specific point because we have concluded that, regardless of the sufficiency of the petition, the evidence is not sufficient to support the verdict.

Default in payments due and the right of the Company to repossess the merchandise are admitted. When the agent Medley arrived at plaintiff's home with a truck to pick up the merchandise she was visiting at the home of her mother-in-law a short distance away. After Medley located her she returned with him to her home and the merchandise was loaded into the truck. The following is a fair synopsis of plaintiff's version of the incident:

"Q. 38. Explain to the jury to the best of your knowledge what happened that day?

*    *    *    *    *    *

"A. Well, this man right here came out. He came in a jeep. He had a trailer in the back. I was at my mother-in-law's. He came down there and told why he was there. I told him I felt like that stove and washing machine was paid for. He said they had sent him for them, so all he had to do was to take them, so I told him my husband is away, to wait until Junior got there to help. He got the stove, I was just about to open the door when he got it caught and cut a plug out of rug. He told me I would have to pick it up and set it out, so I got it out, backed up to my kitchen door. We got it middle ways this door and I had to stop. I had pains run through me like sticking me with a knife. We got it out. He didn't even take the end gate out. He said he was in a hurry, so we lifted it up into the trailer, and we went back to get the washing machine and rolled it to the trailer, and we lifted that washer up, got almost to the end gate, I couldn't put the legs over. I told him I had to set it down, so we set it down. I told him I thought the stove and washer was paid for. He kept telling me he was in a hurry, to help him or he would go and bring the sheriff; that the sheriff would help him, until he had me a wreck. I didn't know what he might do, or anything about it, so I just naturally didn't want him to go get him, and I helped to lift the washer. It made him mad because he had to take this end gate out. I said: 'I can't push that washer over.' it was too heavy with the end gate in. It had a rod that went across it. That had a tap on the end. He had to go to the trouble to take all that off and take his end gate out to load the stuff in, and after that I helped put it in the trailer and he took in on."

Plaintiff also testified to physical symptoms which might indicate that her exertion in lifting the merchandise caused or contributed to cause her miscarriage three weeks later.

We are of the opinion the testimony fails to show any coercion or intimidation within the meaning of the law. The testimony most favorable to plaintiff is that Medley stated he would "bring the sheriff" unless she helped him load the merchandise. We fail to see how this statement could amount either to coercion or intimidation. The al-

ternative to repossession of the merchandise by Medley would have been to apply to a court for legal process, which would have been executed by an officer of the law. It may be said that coercion exists when one is by the unlawful conduct of another induced to do or perform some act under circumstances which deprive him of the exercise of his free will. 14 C.J.S., Coercion, page 1307; First State Bank of Hugo v. Federal Reserve Bank of Minneapolis, 174 Minn. 535, 219 N.W. 908, 61 A.L.R. 467. Although Medley's attitude might have been offensive and lacking in courtesy, there is no showing of any threat or coercion sufficient to destroy plaintiff's free will. The trial court should have directed a verdict for the defendant.

The judgment is reversed for proceedings consistent with this opinion.