**Vera Ann MORRIS, Respondent,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
**petitioner, Appellant.**

**No. C5–85–224.**

Supreme Court of Minnesota.

May 2, 1986.

Kathleen Drake, Minneapolis, for appellant.

Robert Edwards, Anoka, for respondent.

SIMONETT, Justice.

We decide that a private party does not have a cause of action against an insurer for a violation of the Unfair Claims Practices Act, and we reverse the court of appeals.

Plaintiff-respondent, Vera Ann Morris, sued defendant-appellant, American Family Mutual Insurance Company, for basic economic loss no-fault benefits arising out of an auto accident that happened in September 1982. Later, plaintiff Morris moved to amend her complaint to add a second count, alleging defendant American Family violated the Unfair Claims Practices Act, Minn. Stat. § 72A.20 (1984), by refusing to pay the benefits without reasonable investigation "and in various other manners." The Anoka County District Court denied plaintiff leave to amend her complaint on the ground that section 72A.20 did not create a private cause of action. The court of appeals reversed. *Morris v. American Family Mutual Insurance Co.*, 371 N.W.2d 620

(Minn.Ct.App.1985). We granted American Family's petition for further review.

The issue may be framed this way: Does Minn.Stat. § 72A.20, the Unfair Claims Practices Act, either alone or in conjunction with Minn.Stat. § 8.31 (1984), afford a private party a cause of action against an insurer for a violation of the Act?

## I.

We begin with an overview of the Unfair Claims Practices Act in Chapter 72A. The purpose of the Act as stated in Minn.Stat. § 72A.17 (1984) is "to regulate trade practices in the business of insurance * * *." The Act prohibits unfair or deceptive acts and section 72A.19 empowers the Commissioner of Commerce to make rules and regulations. Section 72A.20 defines various practices as unfair or deceptive. The commissioner is empowered to investigate, file charges, conduct hearings, issue cease and desist orders, and impose civil penalties up to $2,000 per offense. Section 72A.21–.23 (1984). If the unfair practice persists, the Commissioner may seek an injunction and may also revoke or suspend the insurer's certificate to do business in Minnesota. See sections 72A.25, subd. 2; 72A.28. Minnesota's act is based on the Model Unfair Claims Practices Act drafted by the National Association of [State] Insurance Commissioners. This Model Act originated in 1947 after Congress passed the McCarran-Ferguson Act subjecting the

insurance industry to federal regulation only to the extent not regulated by state law. See 15 U.S.C. § 1012(b) (1982). To preserve local regulation of insurance companies, most states have adopted some version of the Model Act. Minnesota adopted its version in 1947.[1]

The heart of Minnesota's act is section 72A.20, which defines various methods, acts, and practices as unfair or deceptive, such as false advertising, defamatory statements, false financial statements, discriminatory practices, and the like. Imbedded in this section are subdivisions 12 and 12a, a long and ungainly elaboration of kinds of "unfair service" and standards for handling claims, covering some eight pages. Subdivision 12, as amended in 1984, specifies 14 claims practices as "unfair service,"[2] and provides in part:

**Unfair Service.** Causing or permitting with such frequency to indicate a general business practice any unfair, deceptive, or fraudulent act concerning any claim or complaint of an insured or claimant including, but not limited to, the following practices:

&ast; &ast; &ast; &ast; &ast; &ast;

(4) refusing to pay claims without conducting a reasonable investigation based upon all available information.

Plaintiff Morris' proposed cause of action is based chiefly on an alleged violation by American Family of subdivision 12(4) above quoted.[3]

1. Act of March 24, 1947, ch. 129, 1947 Minn. Laws 188. This Act was later repealed and replaced by new language. Act of May 11, 1967, ch. 395, art. 12, 1967 Minn.Laws 826. Thereafter, the Act was again amended in 1984 to include unfair claims practices. Act of April 25, 1984, ch. 555, 1984 Minn.Laws 999 (codified at Minn.Stat. § 72A.20 (1984)).

2. The Commissioner was empowered under the Act to promulgate rules and regulations. In 1983 the Commissioner proposed a draft of claims regulations, apparently based on a set of model regulations drafted by the National Association of Insurance Commissioners. When negotiations between the Commissioner and the insurance industry over the terms of these regulations bogged down, the Commissioner had the proposed regulations enacted into law as part of section 72A.20. Subdivision 12 is basically the

Model Act and subdivision 12a is a version of the Model Regulations. For a brief history of these events, see Sherman and Crowl, *The Judicial Response to Unfair Claims Practices Laws: Applying the National Experience to the Minnesota Act,* 12 Wm. Mitchell L.Rev. 45, 53–54 (1986).

Plaintiff's position is that her claim of an unfair service arose after April 26, 1984, the effective date of the amendments. Both plaintiff's demand for no fault benefits and American Family's refusal to pay occurred after April 26.

3. Other possible violations might be under subdivision 12(3) ("failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies"); and subdivision 12(6) ("not attempting in good faith to effectuate prompt, fair, and eq-

Plaintiff contends the Unfair Claims Practices Act "is clear on its face" in affording her a private cause of action. There is no merit to this contention. The court of appeals did not even bother to discuss it. Section 72A.20 deals with administrative regulation of insurance practices by the Commissioner of Commerce and says nothing about a private person having a right to sue the insurer for a violation. The Model Act was not intended to create a private action: "In any event, the intent of the NAIC, as evidenced by the language of the Model [Act] and the NAIC Proceedings, and supplemented by this Report, was clearly not to create a new private right of action for trade practices which are prohibited by the Model Act." *Report of Director Robert Ratchford, Jr. of Ohio, Regarding a Private Right of Action under Section 4(9) of the NAIC Model Unfair Trade Practices Act,* 2 N.A. I.C.Proc. 344, 350 (1980). The great majority of state versions of the Model Act have been held not to create a private cause of action. *See* Sherman and Crowl, *The Judicial Response to Unfair Claims Practices Laws: Applying the National Experience to the Minnesota Act,* 12 Wm. Mitchell L.Rev. 45, 59–75 (1986). The savings clause in section 72A.29, subd. 1 (1984) (*i.e.,* no order of the commissioner or the court relieves an insurer from any liability "under any other laws") does not create any new cause of action, and plaintiff points to no language in the Act which in any way gives her the right to sue.

## II.

The only argument plaintiff has for finding a private cause of action, and the one relied on by the court of appeals, is based not on Chapter 72A but on Chapter 8, dealing with the powers and duties of the Attorney General. Minn.Stat. § 8.31, subd. 1 (1984), provides that the Attorney General shall "investigate violations of the law of this state respecting unfair, discriminatory and other unlawful practices in business, commerce, or trade, and specifically, but not exclusively * * * "—and here the statute goes on to specify certain unfair trade statutes which the Attorney General shall investigate, but without mentioning the Unfair Claims Practices Act. Subdivision 3a, sometimes called the "private attorney general provision," then says, "In addition to the remedies otherwise provided by law, any person injured by a violation of *any of the laws referred to in subdivision 1* may bring a civil action and recover damages" plus costs, investigation expenses and attorney fees. *Id.,* subd. 3a (emphasis added). The text of these two subdivisions is set out below.[4]

While section 72A.20 is not listed in subdivision 1, that subdivision says its list is

---

uitable settlements of claims in which liability has become reasonably clear").

**4.** Minn.Stat. § 8.31 (1984), entitled "Additional Duties of the Attorney General," states in pertinent part:

Subdivision 1. **Investigate offenses against the provisions of certain designated sections; assist in enforcement.** The attorney general shall investigate violations of the law of this state respecting unfair, discriminatory and other unlawful practices in business, commerce, or trade, *and specifically, but not exclusively,* the act against unfair discrimination and competition (sections 325D.01 to 325D.08), the unlawful trade practices act (sections 325D.09 to 325D.16), the automobile dealer's anticoercion act (sections 325D.17 to 325D.29), the antitrust act (sections 325D.49 to 325D.66), section 325F.67 and other laws against false or fraudulent advertising, the antidiscrimination acts contained in section

325D.67, the act against monopolization of food products (section 325D.68), and the prevention of consumer fraud act (sections 325F.68 to 325F.70) and assist in the enforcement of those laws as in this section provided.

\*   \*   \*   \*   \*   \*

Subd. 3a. **Private remedies.** In addition to the remedies otherwise provided by law, any person injured by a violation of *any of the laws referred to in subdivision 1* may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court. The court may, as appropriate, enter a consent judgment or decree without the finding of illegality. In any action brought by the attorney general pursuant to this section, the court may award any of the remedies allowable under this subdivision.

(Emphasis added.)

not exclusive, and, it is clear, section 72A.20 does deal with unfair business practices of insurers. Therefore, concluded the court of appeals, by granting a civil action to persons injured by a violation of "any of the laws referred to in subdivision 1," section 8.31, subd. 3a, creates a private cause of action for violations of section 72A.20.

On the other hand, while the list of laws set out in subdivision 1 is not intended to be exclusive, it is uncertain whether Chapter 72A was ever contemplated by the legislature as subject to the private civil action provision of section 8.31, subd. 3a. Until 1983, section 8.31 also contained a subdivision 4 which read, "The provisions of this section shall not apply to any person, firm or corporation engaged in the insurance business and as such subject to sections 72A.17 to 72A.30." Minn.Stat. § 8.31, subd. 4 (1982). This subdivision was repealed in 1983. *See* Act of June 7, 1983, ch. 290, § 173, 1983 Minn. Laws 1405; Act of June 8, 1983, ch. 301, § 235, 1983 Minn. Laws 1718. Legislative history indicates that subdivision 4 was repealed to make sure the Attorney General could investigate and take action on unfair claims practices of insurance companies, which subdivision 4 apparently forbade, not to create a cause of action for private persons.[5] In other words, it is clear that subdivision 3a was originally intended to be inapplicable to Chapter 72A and it is unclear whether the 1983 repealer intended to create a private cause of action.

Plaintiff Morris argues that it is not the legislative intent in 1983 when subdivision 4 of section 8.31 was repealed that is important, but rather the intent behind the amendments in 1984 when subdivision 12a was added to section 72A.20. Subdivision 12a(a) states, "No individual violation constitutes an unfair, discriminatory, or unlawful practice in business, commerce, or trade for purposes of section 8.31." Plaintiff argues the negative implication of this sentence is that *multiple* violations do constitute an unfair practice under section 8.31. Further, plaintiff cites testimony of Commissioner Hatch given in 1984 before committees of both the House and Senate on S.F. 1862 telling legislators that a private cause of action had already been created the year before by the repeal of subdivision 4 of section 8.31. *See* House Judiciary Comm., Mar. 28, 1984. On the other hand, at least a few legislators sounded surprised when told by the Commissioner that a private cause of action had been created the year before, including Representative Bishop, who had moved to delete subdivision 4 in Conference Committee. *Id.* Adding to the confusion is the fact that in 1983 two bills that would have expressly created a private civil remedy for violations of the Unfair Practices Act failed to be enacted. See H.F. 735 and S.F. 701 (1983).

In sum, when we look behind the repeal of subdivision 4 of section 8.31 in 1983 and the amendments to section 72A.20 in 1984, the legislature's intent to create a private cause of action is at best delphic. If a cause of action is to be found, it must be implied. To imply a cause of action, we must first examine the consequences of doing so.

One consequence of a private action would be to enable a private person to share the enforcement duties of the Commissioner of Commerce and the Attorney General. Plaintiff says the Commissioner's office had been receiving more complaints than it could handle and needed help, and that the Commissioner had been hampered

---

5. Repeal of subdivision 4 was contained in two large omnibus bills, H.F. 1290, ch. 301, § 235, 1983 Minn.Laws 1718, and H.F. 274, ch. 290, § 173, 1983 Minn.Laws 1405. The Conference Committee discussion indicates the repeal of subdivision 4 had in mind only permitting the Attorney General to investigate and take action. Representative Bishop stated in conference:

Mr. Chairman, this amendment is to delete from the Statutes relative to the Attorney Gen-

eral * * *. There is a subdivision in the Attorney General's duties at this time that restricts his duties relative to discovery and cooperation of any investigation and says * * [subd. 4 quoted] and it looks to me as though the Attorney General is locked out of the insurance industry.

Conf.Comm. on H.F. 1290, May 20, 1983. This appears to be the only discussion on repeal of subdivision 4.

"because the only remedy was suspension of an insurer's license." But the statutory scheme seems ill designed for a private cause of action, particularly if a private plaintiff must prove multiple violations of the Act amounting to a "general business practice." [6] A private plaintiff would have to explore in pretrial discovery and prove at trial an insurer's general business practices, which would considerably enlarge the scope of litigation. Chapter 72A's comprehensive scheme of administrative enforcement would seem more appropriate to investigating and regulating an insurer's general business practices. Furthermore, the necessity of private enforcement to augment inadequate administrative remedies was lessened, if not eliminated, by the 1984 amendments empowering the Commissioner to punish single, isolated violations and to impose civil fines up to $2,000.

But more to the point, we think, is that a private cause of action would result in significant changes in our common law. First, it is well settled in this state that an injured third party claimant is not privy to the insurance contract and cannot sue an insurer directly for failure to pay a claim but must first obtain a judgment against the insured. *Rinn v. Transit Casualty Co.*, 322 N.W.2d 357, 358 (Minn.1982); *Miller v. Market Men's Mutual Insurance Co.*, 262 Minn. 509, 115 N.W.2d 266 (1962). If an insurer fails to settle in good faith with a third-party claimant, the insured can bring a bad faith action against the insurer; further, the claimant can take an assignment of the insured's bad faith claim and maintain the insured's action against the insurer. *See Strand v. Travelers Insurance Co.*, 300 Minn. 311, 219 N.W.2d 622 (1974). The Unfair Claims Practices Act, however, would apparently grant third party claimants a direct cause of action against an insurer that could be brought at any time.[7] Second, Minnesota common law, at least until now, follows the traditional rule that a bad faith breach of contract does not convert the breach of contract into a tort, *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652 (Minn.1979); and, consequently, a first party insured cannot recover punitive damages in a breach of contract action against her insurer in the absence of some independent tort. *Minnesota-Iowa Television Co. v. Watonwan T.V. Improvement Association*, 294 N.W.2d 297, 309 (Minn.1980). But if an insured's private cause of action against the insurer for violation of section 72A.20 is considered a tort, as some argue, then damages for what, up to now, has been considered a breach of contract action could presumably include damages for emotional distress and punitive damages, as well as investigation expense and attorney fees.

Many courts, in holding that their state's unfair claims practices act does not create a private cause of action, have emphasized the drastic change in the common law such a cause of action would produce.[8] Min-

---

**6.** The plain language of subdivision 12 suggests that a single, isolated violation of the Act is not actionable, and the court of appeals, consistent with those cases addressing the issue, so held. *See Morris*, 371 N.W.2d at 623; *see also Klaudt v. Flink*, 202 Mont. 247, 658 P.2d 1065, 1068 (Mont.1983); *Jenkins v. J.C. Penney Casualty Ins. Co.*, 280 S.E.2d 252, 259–60 (W.Va.1981). *But see Royal Globe Ins. Co. v. Superior Court of Butte County*, 23 Cal.3d 880, 891, 153 Cal.Rptr. 842, 849, 592 P.2d 329, 336 (1979) (some individual violations held actionable based on unique statutory language). Because we dispose of this appeal by finding no private cause of action, we need not reach this issue.

**7.** While plaintiff Morris is a first-party insured suing her insurer, Minn.Stat. § 72A.20, subd. 12a(c)(5) defines "claimant" as "any individual,

corporation * * * asserting a claim against any individual, corporation * * * which is insured under an insurance policy or insurance contract * * *." Section 72A.20, subd. 12 says an "unfair service" can arise from any claim of "an insured or claimant."

**8.** *E.g., Scroggins v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 1036, 30 Ill.Dec. 682, 688, 393 N.E.2d 718, 724 (1979) ("[W]e believe a more explicit legislative intent * * * should be required where imposition of such a duty would be in derogation of so much common law"); *Patterson v. Globe American Casualty Co.*, 101 N.M. 541, 685 P.2d 396 (N.M.Ct.App.1984) (when a statute creates a right which did not exist at common law and provides administrative remedies, those remedies are exclusive); *Kranzush v. Badger State*

nesota also recognizes that "statutes are presumed not to alter or modify the common law unless they expressly so provide." *Agassiz & Odessa Mutual Fire Insurance Co. v. Magnusson,* 272 Minn. 156, 166, 136 N.W.2d 861, 868 (1965); *see also Minnesota-Iowa Television Co.,* 294 N.W.2d at 311 ("[I]f the legislature had intended to overrule the line of cases prohibiting punitive damages in contract cases, it would have specifically provided for such awards in the statute"); *Washburn v. Van Steenwyk,* 32 Minn. 336, 349, 20 N.W.324, 326 (1884) (statutes are enacted with regard to existing common law and should be construed to harmonize with that law "unless the intention to change or repeal it is apparent").

Here there is lacking an explicit legislative intention to create a new cause of action in derogation of our common law. We hold, therefore, that a private person does not have a cause of action for a violation of the Unfair Claims Practices Act.

Reversed.

COYNE, J., took no part in the consideration or decision of this case.

*Mutual Casualty Co.,* 103 Wis.2d 56, 81, 307 N.W.2d 256, 269 (1981) (emphasizing "the need for a clear expression of intent to create a private right of action, expecially where that right would be in clear derogation of the common law * * *").