**The PILLSBURY COMPANY,**
**Appellant,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, et al., Home Insurance Company, Respondents,**

**Federal Insurance Company, Defendant.**

**No. C4–87–2311.**

Court of Appeals of Minnesota.

May 31, 1988.

Review Granted July 28, 1988.

David C. Forsberg, Douglas L. Skor, Briggs and Morgan, St. Paul, Ronald E. Lund, Edna C. Brazaitis, Minneapolis, for Pillsbury Co.

James S. Simonson, William L. Killion, David M. Coyne, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, John M. Quitmeyer, John J. Sheehy, Rogers & Wells, New York City, for Nat. Union Fire Ins. Co. of Pittsburgh, Pennsylvania, et al.

Henry R. Daar, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., Kay N. Hunt, V. Owen Nelson, Lommen, Nelson, Cole & Stageberg, Minneapolis, for Home Ins. Co.

Heard, considered and decided by HUSPENI, P.J., and PARKER and MULALLY *, JJ.

## OPINION

HUSPENI, Judge.

After its request for insurance benefits was denied, appellant, the Pillsbury Company, brought an action seeking a judgment declaring that the insurance policy issued to it by respondents, National Union Fire Insurance Company of Pittsburg, Royal Indemnity Company, Employers Mutual Casualty Company and the Home Insurance Company, provided coverage for appellant's losses. In an amended complaint, appellant alleged bad faith denial of coverage, defamation and coercion by respondents, and sought punitive damages and attorney fees pursuant to Minn.Stat. § 549.21. Respondents moved to strike the portions of the amended complaint alleging bad faith denial of coverage, defamation and coercion, and seeking punitive damages and attorney fees under chapter 549. This appeal is brought from the summary judgment dismissing and striking all challenged claims. We affirm.

## FACTS

In August of 1983, respondents issued to appellant a Products Integrity Impairment Loss of Revenue and Product Recall Extra Expense Insurance Policy. Appellant paid an annual premium of $280,000 for insurance coverage of $150 million subject to a $20 million deductible. The insurance policy was specifically designed for the food industry to protect against catastrophic events such as the adverse effect on sales of publicity surrounding the discovery of

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

potentially toxic materials in a food product.

For several years before appellant purchased the policy, the United States Environmental Protection Agency (EPA) had been conducting an investigation to determine whether the insecticide Ethylene Dibromide (EDB) was carcinogenic. During this period, EDB use as a fumigant for grain and grain products was permitted without restriction by the federal government.

In December 1983, the State of Florida established tolerance levels for EDB residues in food products of one part per billion. Florida ordered the removal from the food stores within the state of any product containing EDB in excess of the permitted tolerance limits. For several months following the Florida incentive, there was wide ranging and adverse publicity concerning EDB in grain products. Appellant suffered losses in excess of $70 million. In February 1984, the EPA released guidelines for the maximum acceptable levels of EDB residues in grain-based foods.

Appellant notified respondents of its loss, and in November 1985 submitted a Proof of Loss together with detailed calculations showing a loss in excess of $70 million. At two meetings held in May of 1986, representatives of both appellant and respondents discussed appellant's insurance claim. Respondents made an offer to settle. Appellant rejected the offer. Respondents then denied the claim, alleging misrepresentation by appellant when it procured insurance coverage from respondents, and alleging failure by appellant to cooperate during respondents' investigation of the claim. Additionally, respondents alleged that appellant's loss did not exceed the $20 million deductible. In a December 1986 letter, respondents denied appellant's claim on the basis that exclusionary language in the insurance policy precluded coverage.

On June 3, 1986, appellant brought a declaratory judgment action seeking to have its loss covered by the insurance policy. In its amended complaint, appellant alleged bad faith breach of the insurance contract, defamation and coercion on the part of the respondents and claimed punitive damages and attorney fees under chapter 549.

In August 1986, respondents moved under Minn.R.Civ.P. 12.02 and 12.06 to dismiss and strike from the amended complaint appellant's allegations of bad faith, defamation and coercion, and the claims for punitive damages and attorney fees on the basis that the complaint failed to state a claim upon which relief could be granted. Subsequently, both parties presented affidavits converting the rule 12 motion into a rule 56 motion for summary judgment.

On June 10, 1986, the motion was argued before the referee who recommended that respondents' motion be granted. The referee reasoned:

[Appellant] * * * contends [respondents] were guilty of three torts, a) a violation of *Minnesota Unfair Claims Practices Law,* M.S.Sec. 72A.20, b) coercion, and c) trade defamation.

a) *Morris v. American Mutual Insurance Company,* 386 N.W.2d 233 [ (Minn.1986) ], specifically holds a private person does not have a cause of action for violation of this law.

b) Coercion requires wrongful conduct on the part of a defendant sufficient to constrain the plaintiff from doing something he has a legal right to do and resulting in damage to him. *First State Bank of Hugo v. Federal Reserve Bank of Minneapolis,* 174 Minn. 535, 219 N.W. 908 [1928].

In this instance, [appellant] rejected the settlement offer it characterized as "grossly inadequate" and brought this action.

A threat to do that which one has a legal right to do cannot be deemed coercion, *Franklin Nursing Home v. Local 144, et al* [122 A.D.2d 22], 503 N.Y.Supp. (2)[2d] 908, 909. [Respondents] have a right to argue that in selling products containing E.D.B. in whatever minimal amount and within the then current tolerance levels, [appellant] was selling carcinogenic products to the public. * * *

* * * * * *

c) Trade defamation to be actionable requires publication. In a technical sense this could be said to be present since there were independent accountants and adjustors present in addition to employees of appellant. However, it would seem unlikely any of them would regard the comments as anything more than an over-statement of [respondents'] position and not to be taken literally. Again, there is an absence of damages.

On September 11, 1987, over appellant's objection, the trial court adopted the referee's recommendation and granted partial summary judgment pursuant to Minn.R. Civ.P. 54.02.

Appellant's petition to the supreme court for accelerated review was denied on December 23, 1987. This appeal followed.

### ISSUES

1. Could appellant bring a private action under Minn.Stat. § 72A.20?

2. Did the trial court err in striking appellant's claim for punitive damages on the basis that the bad faith denial of the insurance claim did not constitute an independent tort?

3. Did the trial court err in dismissing appellant's defamation claim?

4. Did the trial court err in dismissing appellant's coercion claim?

5. Did the trial court err in striking appellant's claim for attorney fees under chapter 549?

### ANALYSIS

When reviewing an award of a summary judgment, this court must determine whether there was an issue of material fact and whether the trial court properly applied the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

### I.

■ Although it is not clear that appellant even argued to the trial court that it had a cause of action under Minn.Stat. § 72A.20, the trial court ruled on the issue. This issue was resolved by the supreme court in *Morris v. American Mutual Insurance Company*, 386 N.W.2d 233 (Minn. 1986), which held that a private person does not have a cause of action for a violation of Minn.Stat. § 72A.20. *Id.* at 238.

### II.

Appellant contends punitive damages should be recoverable because respondents' conduct surrounding the alleged breach of the insurance contract amounted to an independent tort.

"An insurance policy is a contract, the terms of which determine the rights and obligations of the contracting parties. * * * The insurer is obligated to pay when the insured suffers a loss covered by the policy." *Olson v. Rugloski*, 277 N.W.2d 385, 387 (Minn.1979) (citations omitted). The damages recoverable for breach of a contract "are such as either arise naturally from the breach itself or such as may reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach * * *." *Francis v. Western Union Telegraph Co.*, 58 Minn. 252, 260, 59 N.W. 1078, 1079 (1894) (following the rule in *Hadley v. Baxendale*, 9 Exch. 341 (1854)). Consequently, "[w]hen the insurer refuses to pay or unreasonably delays payment of an undisputed amount, it breaches the contract and is liable for the loss that naturally and proximately flows from the breach." *Olson*, 277 N.W.2d at 387–88.

■ Punitive damages, however, are not recoverable in actions for breach of contract, "except in exceptional cases where the breach of contract constitutes or is accompanied by an independent, wilful tort." *Id.* at 388. In certain circumstances, the breach of an insurance contract may amount to a tort:

[A]n insurer is normally liable only on its contract, but a bad faith failure to pay the insured when the insured event occurs, especially on a policy such as a fire or medical policy where the need is very great, may subject the insurer to tort liability, with the concomitant responsibility for punitive damages or mental distress damages, where those elements

can be proven. Similarly, where the insurer pays on its policy, but indulges itself in an unresolved conflict of interest with its insured, liability in tort may be imposed. * * *

Prosser & Keeton, § 92 *The Law of Torts* (5th ed. 1984 and Supp.1988). However, in *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775 (Minn.1975), *cert. denied* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976), where a research scientist brought a breach of contract action and sought punitive damages from the nonprofit foundation which had allegedly maliciously withdrawn his cancer research grant, the supreme court held "that this is not the exceptional case where the breach of contract amounts to an independent tort." *Id.* at 441, 234 N.W.2d at 790. The court reasoned:

> Assuming for the sake of argument that an implied covenant of good faith was maliciously broken in this contract, that malicious motive may be important in determining whether a material breach has occurred, but it is immaterial in so far as damages for contract breach are concerned. * * * A malicious or bad-faith motive in breaching a contract does not convert a contract action into a tort action.

*Id.* at 441–42, 234 N.W.2d at 790. *See also Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648, 652 (Minn.1979) (where the insured brought an action against the insurer to recover under the no-fault provisions of a motor vehicle insurance policy and also made a claim for damages for intentional infliction of emotional distress by nonpayment of claims and punitive damages).

The rule against converting a bad faith breach of contract into a tort action was reiterated in *Morris* where an insured brought an action against its insurer for basic economic loss no-fault benefits. The supreme court stated:

> Minnesota common law, at least until now, follows the traditional rule that a bad faith breach of contract does not convert the breach of contract into a tort * * * and, consequently, a first party insured cannot recover punitive damages

in a breach of contract action against her insurer in the absence of some independent tort.

386 N.W.2d at 237 (citations omitted). This court also followed the rule in *Saltou v. Dependable Insurance Co. Inc.*, 394 N.W. 2d 629, 633 (Minn.Ct.App.1986), stating that "appellants must show more than malicious failure to pay an insurance claim in order to recover extra-contractual damages." *See also R.L.B. Enterprises, Inc. v. Liberty National Fire Insurance Co.*, 413 N.W.2d 551, 554 (Minn.Ct.App.1987).

Appellant recites no exceptional circumstances such as required by *Wild* which would justify a determination that the alleged breach of contract constituted an independent tort. Consequently, we conclude that the trial court properly refused to permit this first party insured to base its request for punitive damages upon bad faith breach of contract.

Appellant also argues for an extension of the relief granted to a third party claimant in *Short v. Dairyland Insurance Co.*, 334 N.W.2d 384 (Minn.1983) to the first party claims here. In *Short*, the trustee in bankruptcy for the insured recovered actual and punitive damages against the insurer for its bad faith failure to settle a third party claim. The supreme court stated:

> In Minnesota, a liability insurer, having assumed control of the right of settlement of claims against its insured, may become liable in excess of its undertaking under the terms of the policy if it fails to exercise "good faith" in considering offers to compromise the claim of an amount within the policy limits. * * * This duty to exercise "good faith" includes an obligation to view the situation as if there were no policy limits applicable to the claim, and to give equal consideration to the financial exposure of the insured. * * *
> The insurer's duty of good faith is breached in situations in which the insured is clearly liable and the insurer refuses to settle within the policy limits and the decision not to settle within the policy limits is not made in good faith and is not based upon reasonable

grounds to believe that the amount demanded is excessive.

*Id.* at 387–88 (citations omitted). We cannot extend the rule when the supreme court itself has declined to.[1] *See Morris*, 386 N.W.2d at 237. In Minnesota, recovery of punitive damages against an insurer for bad faith failure to settle has been restricted to third party claims.

Appellant also asks us to create the new tort of bad faith denial of an insurance claim. We believe this request is but a restatement of appellant's argument that malicious breach of a contract constitutes an independent tort. An action for bad faith denial of an insurance claim "could not be maintained without pleading and proving the contract." *Francis*, 58 Minn. at 261, 59 N.W. at 1080. Finally, we are persuaded by the reasoning in *Francis:*

> We recognize the fact that the common law is not a code of cast-iron rules, but a system of principles capable of being applied to new conditions as they arise; and when a case arises which falls within a recognized legal principle the fact that it is new in instance will not and ought not to stand in the way of the courts applying the principle. But to allow damages for injury to the feelings resulting from a breach of contract * * * would be, not to apply an old principle to a new instance, but to adopt a new principle entirely unknown to the law. Courts have no more right thus to abrogate the common law than they have to repeal the statutory law. Lord Coke said: "The wisdom of the judges and sages of the law has always suppressed new and subtle inventions in derogation of the common law. * * *" The great lights of the law may take some liberties with the law in the way of new applications of old principles that modesty would forbid to ordinary men; and while we are not disposed to look upon everything ancient with slavish reverence merely because it is ancient, it would certainly be presumptuous in us to lightly discard a doctrine which has been so long approved, and

which is so firmly established by authority.

*Id.* at 265, 59 N.W. at 1081.

### III.

Appellant also argues that punitive damages are recoverable because respondents' attorneys injured the appellant by uttering the following defamatory statements at the May 21, 1986, meeting:

> That Pillsbury knowingly sold products containing dangerous levels of EDB;
>
> That Pillsbury deliberately resisted and tried to thwart the regulatory efforts of government agencies concerning EDB;
>
> That Pillsbury had withheld critical information about EDB; and
>
> That Pillsbury's directors and officers had reason to fear stockholders' suits based on their actions concerning EDB.

Appellant maintains these statements were made several days before respondents denied appellant's insurance claim.

 In order to prevail on the defamation claim, the defamation must be independent of the alleged breach of contract and not a part of the malicious conduct associated with the breach. *See, e.g., Wild*, 302 Minn. at 440, 234 N.W.2d at 789. In *Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876 (Minn.1986), the supreme court clarified its holding in *Wild*, stating:

> We did not hold that the harm resulting from a bad-faith termination of a contract could never give rise to a tort recovery. Indeed, we recognized such a possibility by stating that a plaintiff is limited to contract damages "except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort." * * * If plaintiffs here can establish a cause of action for defamation, the fact that the defamation occurred in the context of employment discharge should not defeat recovery.

*Id.* at 887–88 (citing *Wild* 302 Minn. at 440, 234 N.W.2d at 789). Respondents do not deny making the statements but claim that

---

**1.** We recognize appellant's implicit awareness, in its petition for accelerated review to the su-

preme court, of the limited function of this court.

any defamation was inseparable from the alleged breach of contract. We agree. Appellant purchased the policy to protect itself from the damaging effects of adverse publicity surrounding unfounded claims concerning its products. Upon entering the insurance contract, appellant should have anticipated that respondents, in relying upon the extensive exclusionary language in the policy, would conceivably contend that the damaging allegations brought against appellant through adverse publicity had some basis in fact. The trial court's denial of the defamation claim was proper.

### IV.

█ Appellant also bases its claimed entitlement to punitive damages upon an allegation that at the May 1986 meetings respondents' attorneys attempted to force settlement by stating:

> [I]f Pillsbury litigates the claim the insurance companies will bring out alleged facts which will be embarrassing and harmful to the company and its officers and directors.
>
> [Respondents] said that [they] would show that our top management deliberately and knowingly sold dangerous carcinogenic products to the public, fought government efforts to ban the product, and then turned around and tried to become the white knight and the salvation of the industry by advocating the removal of EDB from all grain based products. [Respondents] said that even if we prevail in litigation on the claim, we could ultimately lose more from the publicity than we gained from the lawsuit.

Appellant argues that respondents' statements constitute coercion. Respondents do not deny that they made these statements.

In *First State Bank of Hugo v. Federal Reserve Bank of Minneapolis*, 174 Minn. 535, 219 N.W. 908 (1928), the supreme court defined coercion as:

> It is said to be compulsion, force, or duress. It is said to exist where one, by the unlawful act of another, is induced to do or perform some act under circumstances which deprive him of the exercise of his free will.

*Id.* at 537, 219 N.W. at 909. To sustain an action for damages on the ground of coercion, there must be some wrongful or unlawful act, acts or conduct on the part of respondents sufficient to constrain appellant, against its will, to do or refrain from doing something which appellant has a legal right to do or refuse to do, and resulting in damage to him. *Id.* The conduct need not be "unlawful" in the technical sense of that term. *Id.* "It is sufficient if same is wrongful in the sense that it is so oppressive under given circumstances as to constrain one to do what his free will would refuse." *Id.* "The test is not the nature of the threats, but rather the state of mind induced thereby in the victim." *Wise v. Midtown Motors*, 231 Minn. 46, 52, 42 N.W. 2d 404, 407 (1950).

█ The question here is whether appellant's free will was overcome by coercion. *Id.* Clearly, respondents' allegedly coercive statements did not prevent appellant from bringing this lawsuit. Nor does appellant claim that the alleged coercion caused it any damage. We conclude, therefore, that appellant's coercion claim was properly dismissed.

### V.

█ Appellant's final argument is that the trial court erred in dismissing its claim for attorney fees pursuant to Minn.Stat. § 549.21, subd. 2 (1986). Section 549.21, subd. 1 mandates:

> The parties by their attorneys in any civil action shall attach to and make a part of the pleading served on the opposite party or parties a signed acknowledgment stating that the parties acknowledge that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties pursuant to subdivision 2.

*Id.* Subdivision 2 provides:

> Upon motion of a party, * * * the court in its discretion may award to that party * * * reasonable attorney fees * * * if the party or attorney against whom * * * reasonable attorney * * * fees are charged acted in bad faith; asserted a claim or defense that is frivolous and

that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court. * * *

*Id.* In drafting the statute in this manner, it appears that the legislature intended that such a motion should be brought during litigation. Respondents argue that attorney fees will be awarded under section 549.21 solely for conduct during litigation. *See, e.g., Barr/Nelson, Inc. v. Tonto's Inc.,* 336 N.W.2d 46 (Minn.1983) where the supreme court stated:

> Although the jury found that [the insurer/defendant] acted willfully and maliciously in failing to carry out its obligation under the bond, the trial court made no finding regarding bad faith in the conduct of the litigation itself. This distinction is crucial, as we have held that Minn.Stat. § 549.21 *only* incorporates bad faith as to an issue in litigation.

*Id.* at 53 (emphasis in original). *See also Mattson v. Underwriters at Lloyds of London,* 385 N.W.2d 854, 858 (Minn.Ct. App.1986). We believe the legislature did not contemplate the assertion in the ad damnum clause of a claim for attorney fees under section 549.21 but rather that motion for such fees be made as provided in subd. 2 of the statute. We conclude that appellant's claim in its complaint for attorney fees under section 549.21 was properly dismissed.

### DECISION

Appellant's claims for punitive damages for bad faith denial of an insurance claim, defamation and coercion, and for bad faith attorney fees were properly dismissed.

Affirmed.